[Civ. No. 39724. First Dist., Div. One. Jan. 25, 1978.]

MOUNTAIN VIEW CHAMBER OF COMMERCE et al.,
Plaintiffs and Appellants, v.
CITY OF MOUNTAIN VIEW, Defendant and Respondent.

84

## COUNSEL

Gazzera, Antonioli & Bain, William A. Antonioli and John K. Fukasawa, Jr., for Plaintiffs and Appellants.

Robert J. Wheeler, City Attorney, for Defendant and Respondent.

## OPINION

**KELLY, J.***—The plaintiffs-appellants are the Mountain View Chamber of Commerce, a nonprofit corporation, four individual sign owners in the City of Mountain View, and one corporate sign owner, a restaurant in the City of Mountain View.

The appellants initially filed a complaint which contained six causes of action to enjoin the enforcement of the respondent City of Mountain View's sign regulations and sought declaratory relief claiming that said

*Assigned by the Chairperson of the Judicial Council.

sign regulations are unconstitutional and unenforceable as applied to zoning districts in which the individual appellants had located their businesses. A temporary restraining order was issued prohibiting the city from enforcing section 36.29 of the Municipal Code with reference to the removal of nonconforming signs.

After a hearing on the preliminary injunction, the court denied the injunction, sustaining the city's demurrer without leave to amend on the ground that the appellants failed to exhaust their administrative remedies. Therefore the court ruled it was without jurisdiction.[1]

As of 1966, the city had adopted a set of comprehensive sign regulations by an amendment to its zoning ordinance. The regulations are coordinated to the permissible activities within each zoning district. At the time these sign regulations were adopted, some of the existing signs within the city did not conform. Section 36.29.2(c) of the Municipal Code regulating zoning provided for an amortization period of some nine and one-half years (until July 1, 1975) within which period the owners of nonconforming signs had an opportunity to remove them.

As of June 30, 1975, the city council passed municipal ordinance No. 21.75, amending section 36.29.2(c) to provide as follows: "All signs, billboards, or commercial advertising structures which do not conform to the requirements of this chapter may be continued until July 1, 1975, or five (5) years from the date it becomes nonconforming, whichever is later, at which time such nonconforming signs shall be modified to conform to the requirements of this chapter or shall be removed. All signs, billboards, or commercial advertising structures in a Planned Community (P) District which do not conform to the provisions of the Precise Plan applicable thereto shall be removed or modified to conform to the provisions of such Precise Plan by the date, if any, specified in such Plan or five (5) years from the date such sign, billboard or commercial advertising structure became nonconforming, whichever is later. Any modification of the standards applicable to a sign, either by ordinance change, or by imposition or amendment of the sign standards in a precise plan, shall not be construed as extending the amortization period of any sign which was nonconforming prior to such modification. Any sign, billboard or commercial advertising structure not removed or brought into conformity with the requirements of this chapter, or any

---

[1]The appellants have filed this appeal from the trial court's ruling.

applicable precise plan, by the date specified above, is *hereby declared to be a public nuisance and may be abated by the City Attorney or other appropriate city official.*" (Italics added.) Any violation of the zoning ordinance would also subject a party to a maximum fine of $500 or imprisonment for a maximum of six months or both.

As of July 1, 1975, property owners with nonconforming signs were notified by the city building department to bring all nonconforming signs into conformity and with respect to those signs not conforming, said department was in the position of enforcing the ordinance, except when the temporary restraining order was in effect.

The city zoning ordinance permits property owners or their agents to apply for a variance. Section 36.44 provides in part: "*Variances.* Where practical difficulties, unnecessary hardships and results inconsistent with the general purposes of this chapter may result from the strict application of certain provisions thereof, variance may be granted as provided in this section. This section may not be used to allow a use that is not in conformity with the uses specified by this chapter for the district in which the land is located.

"*Application.* The owner or his agent may make application for variance which shall be made on a form prescribed by the zoning administrator. . . ."

Criteria to consider in an application for a variance are, in pertinent part, as follows: "(1) That there are exceptional or extraordinary circumstances or conditions applying to the land, building or use . . ., which circumstances or conditions do not apply generally to land, buildings, or uses in the same district.

"(2) That the granting of the application is necessary for the preservation and enjoyment of substantial property rights of the petitioner.

"(3) That the granting of such application will not, under the circumstances of the particular case, be outweighed by the adverse effects to the health or safety of persons residing or working in the neighborhood of the property of the applicant, and will not, under the circumstances of the particular case, be materially detrimental to the public welfare or injurious to property or improvements in said

neighborhood." (Mountain View Mun. Code, § 36.44(d).) The criteria set out above in the ordinance are taken from state law.[2]

Applicants for a variance are entitled to a public hearing before the zoning administrator and may appeal an adverse ruling to the city council. The appeal provisions are stated in the footnote below.[3]

It is conceded by all parties that none of the appellants availed themselves of the variance procedure prior to filing the action below. The issue before the court is: Did the failure of appellants to exhaust their administrative remedies deprive the trial court of jurisdiction to hear the case?

■ It is fundamental California law that before one is entitled to judicial review or relief, he must exhaust whatever administrative remedies are provided. In the language of *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 981 [88 Cal.Rptr. 533]: "it is settled that the exhaustion of an administrative remedy, where one is available, is a condition precedent to obtaining judicial relief, and that 'a court violating the rule acts in excess of jurisdiction' [citations]."

Similarly, in *Abelleira* v. *District Court of Appeal* (1941) 17 Cal.2d 280, 292-293 [109 P.2d 942, 132 A.L.R. 715], the Supreme Court stated: "[W]here an administrative remedy is provided by statute, relief must be

---

[2]Government Code section 65906 provides as follows: "Variances from the terms of the zoning ordinances shall be granted only when, because of special circumstances applicable to the property, including size, shape, topography, location or surroundings, the strict application of the zoning ordinance deprives such property of privileges enjoyed by other property in the vicinity and under identical zoning classification. [¶] Any variance granted shall be subject to such conditions as will assure that the adjustment thereby authorized shall not constitute a grant of special privileges inconsistent with the limitations upon other properties in the vicinity and zone in which such property is situated. [¶] A variance shall not be granted for a parcel of property which authorizes a use or activity which is not otherwise expressly authorized by the zone regulation governing the parcel of property. The provisions of this section shall not apply to conditional use permits."

[3]The appeal provisions are as follows:

Section 36.55: "In all proceedings involving . . . *(2) ordinance interpretations, (3) variances, . . .* an appeal from any appealable action of the zoning administrator in connection therewith shall be taken and pursued in accordance with the provisions of this article." (Italics added.)

Section 36.56 then provides: "(a) Any aggrieved party not satisfied with any final action of the zoning administrator in connection with any of the proceedings set forth in Section 36.55 . . . may, within ten (10) days after the zoning administrator's action, appeal to the city council."

sought from the administrative body and this remedy exhausted before the courts will act. . . . [¶] The rule itself is settled with scarcely any conflict. It is not a matter of judicial discretion, but is a fundamental rule of procedure laid down by courts of last resort, followed under the doctrine of *stare decisis,* and binding upon all courts. . . . Bearing in mind the analysis of jurisdiction which has heretofore been made, and examining the authorities dealing with the rule, we are necessarily led to the conclusion that exhaustion of the administrative remedy is a jurisdictional prerequisite to resort to the courts."

The appellants contend that the exhaustion of administrative remedies doctrine does not apply to their case because of recognized exceptions to that doctrine as set out in judicial decisions. These recognized exceptions are as follows: (1) irreparable injury will result if judicial relief is denied; (2) it is futile to seek administrative relief; (3) constitutional issues are raised; and (4) public rights are involved.

In *Abelleira,* the California Employment Commission had ordered unemployment benefits to be paid the unemployed employees of the Matson Navigation Company. The employers appealed the ruling to the District Court of Appeal, who directed the commission to withhold the payment of the unemployment benefits to the employees, agreeing with the employers' contention that irreparable injury would be suffered if the payments were charged to the employer company's reserve accounts until the matter could be resolved on appeal. The Supreme Court could find no irreparable injury and issued a writ of prohibition restraining the District Court of Appeal from enforcing its decision.

*Abelleira* is recognized as authority for the proposition that exhaustion of administrative remedies is not required when, in a particular factual situation, irreparable injury will result if the administrative remedy were first required to be exhausted before seeking judicial relief. And in that regard the court referred to case law concerning confiscatory rate orders of state administrative agencies, stating: "Continued operation of the business at the rate imposed pending the appeal may in some instances be so unprofitable as to amount to a destruction of the business, and therefore a taking of property without due process of law. The courts in these cases issue injunctions to stay the enforcement of the new rate until a final determination of its validity, in order to protect the constitutional rights of the petitioning utilities. *In brief, these decisions establish the right to equitable relief to protect the property rights of a petitioner from*

*irreparable injury immediately threatened by a void administrative act.* The soundness of this proposition cannot be questioned, but it has no relevancy here." (17 Cal.2d at pp. 296-297; italics added.)

Other types of irreparable injury have been recognized by court decision as exceptions to the doctrine of exhaustion of administrative remedies. In *Greenblatt* v. *Munro* (1958) 161 Cal.App.2d 596 [326 P.2d 929], the appellant was threatened with the loss of his on-sale liquor license. This would terminate his business as the source of his livelihood. The court stated: "Thus it may very well be that were we not to apply the exception to the exhaustion of remedy rule, petitioner would suffer the extreme penalty of losing his license, . . ." (*Id.,* at p. 607.)

In *Sail'er Inn, Inc.* v. *Kirby* (1971) 5 Cal.3d 1 [95 Cal.Rptr. 329, 485 P.2d 529, 46 A.L.R.3d 351], the petitioners were in the untenable position of choosing to obey conflicting federal and state laws. The Supreme Court held it would be improper to require them to exhaust their administrative remedies as a prerequisite to an application for judicial relief.

■ To support their position on the issue of irreparable injury the appellants herein point to the penalty provisions of the city's municipal ordinance which provide that nonconforming signs are public nuisances, and also to the civil and criminal sanctions set out in the ordinance. They also refer to the loss of the value of their investment in the signs and the value of business lost because of the lack of advertising. The civil or criminal penalties by themselves are not a sufficient showing of irreparable injury. The record does not point to any threatened action, civil or criminal, by the respondent to summarily remove any of the appellants' nonconforming signs, nor has the respondent actually removed such signs. The record does not point out any affirmative action on the part of the respondent which can be labeled as a deprivation of any of the appellants' property rights without due process of law.

The true facts of the situation are that the nonconforming signs have been such since the effective date of the 1966 amendments. The appellants could have sought a variance since 1966, but no variance was ever sought. From the record the appellants had some nine and one-half years amortization period to take care of the nonconforming signs. Under the provisions of municipal ordinance No. 21.75, which amended section 36.29.2(c) they were given ample opportunity to modify noncon-

forming signs to the requirements or to remove them. Had they pursued the administrative remedy allowed under the ordinance .to seek a variance and been granted one, the later enacted penalty provision (ordinance No. 21.75, declaring all nonconforming signs to be a public nuisance) would not have affected their signs.

Unlike *Greenblatt, supra,* which involved the immediate loss of a license to continue in business, the alleged factual loss asserted by the appellants herein is potential and no case authority is submitted by the appellants to sustain their position that such a potential loss by itself is a sufficient exception to the rule that one. must exhaust his administrative remedies before seeking judicial review. With reference to the claimed loss of business asserted by appellants, such could have been documented before the zoning administrator or the city council in a variance proceeding and could have supported a request for a variance. Instead the appellants have neglected to pursue these administrative remedies and now assert they have been irreparably injured.

In light of the case law which has set forth the doctrine of irreparable injury as an exception to the requirement of exhaustion of administrative remedies, the court fails to see how the factual situation as presented by the appellants on that issue falls within the scope of the irreparable injury doctrine.

The appellants next contend that it would be futile for them to pursue any administrative remedy under the subject ordinance, citing *Ogo Associates* v. *City of Torrance* (1974) 37 Cal.App.3d 830 [112 Cal.Rptr. 761]. *Ogo* does recognize the rule that the exhaustion of administrative remedies is not a prerequisite to seeking judicial review when such an exercise would be futile. But the factual situation in *Ogo* pointedly demonstrates the controlling difference from the instant case. Plaintiffs-appellants Ogo Associates owned property in the Victor area in the City of Torrance which was zoned to permit the construction of apartments thereon. Having secured the necessary financing, the appellants sought a building permit from the city to construct federally financed low-income apartment housing. Before the permit. could be issued, the city council enacted ordinances declaring a moratorium on the issuance of building permits and adopted a permanent ordinance rezoning .the Victor area limiting the land use therein to light manufacturing. For the appellants to construct low-cost housing as contemplated, they would have to seek a variance in view of the new zoning regulations.

In ruling that the appellants did not have to first pursue their administrative remedies as a condition precedent to seeking judicial relief, the court stated: "The evidence is overwhelming that the city council rezoned the Victor Precinct area because appellants planned to build their project there; it is inconceivable the city council would grant a variance for the very project whose prospective existence brought about the enactment of rezoning. This is not a situation where the possibility of relief from a general policy exists because of the unusual circumstances of a particular case; to the contrary, in this instance the circumstances of the particular case gave birth to the ordinance's general policy. To require appellants to apply to the city council for a variance on behalf of this project would be to require them to pump oil from a dry hole. (Cf. *Park View Heights Corporation* v. *City of Black Jack* (8th Cir. 1972) 467 F.2d 1208; *G & D Holland Construction Co.* v. *City of Marysville,* 12 Cal.App.3d 989 . . . .)" (*Id.,* at p. 834.)

Another exception to the exhaustion of administrative remedies doctrine recognizes a basic truism that the law does not require one to engage in a futile or useless act. (Civ. Code, § 3532.) But the scope of that rule is well set out in the *Abelleira* case, *supra,* wherein the case stated: "They [the employers] assert that the [California Employment Commission] has already decided cases on similar facts against their present position, and therefore that an appeal in the instant case would be fruitless. This is, indeed, the slender thread upon which their entire case hangs. But again their position is unsound in principle and unsupported by the better authorities, . . . The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide." (17 Cal.2d at pp. 300-301.)

Unlike the factual situation in *Ogo* (wherein the city council's actions were primarily directed to a particular development in the Victor area), the sign regulations in the instant case were based on a comprehensive amendment to the zoning ordinance and applied to all zoning districts within the city limits of Mountain View. The record is barren of any evidence to show that the thrust of the subject sign ordinance or regulations or any provisions thereof was directed exclusively at the individual appellants or their property. The sign regulations were adopted as part of the zoning ordinance which set up a general policy regarding signs throughout the community and provided for the needed

flexibility for unusual problems through the variance and appeal procedures.

The appellants contend that since ordinance No. 21.75 declares all nonconforming signs as public nuisances, "the respondent City would not, and could not, grant them a variance, or rule in their favor on an appeal from a denial of their request for a variance." The answer to this contention is as set out in *Abelleira,* as heretofore quoted: "The whole argument rests upon an illogical and impractical basis, since it permits the party applying to the court to assert without any conclusive proof, and without any possibility of successful challenge, the outcome of an appeal which the administrative body has not even been permitted to decide." (17 Cal.2d at p. 301.) The appellants have ignored the fact that the zoning administrator has authority to look at and examine each case on its own merits and to remove it from the list of nonconforming signs if the circumstances warrant. The appellants make no contention that the respondent cannot enact reasonable sign regulations in the exercise of its police powers. ■ It has long been recognized that the reasonable regulation of signs and billboards constitutes a valid exercise of the police power. (*Metromedia, Inc.* v. *City of Pasadena* (1963) 216 Cal.App.2d 270 [30 Cal.Rptr. 731].)

■ The appellants further contend that they need not comply with the requirements of the exhaustion of administrative remedies because the Mountain View zoning ordinance as it affects signs is unconstitutional on its face, i.e., as an abridgement of appellants' right of free speech and because it contains inadequate standards. No case is cited by appellants which excuses compliance with the doctrine of exhaustion of administrative remedies because of claimed unconstitutionality of a zoning ordinance.

It is well settled law in California that the doctrine of exhaustion of administrative remedies applies to constitutional challenges of zoning ordinances. In *Metcalf* v. *County of Los Angeles* (1944) 24 Cal.2d 267 [148 P.2d 645], it was ruled that in a constitutional challenge of an ordinance as applied to a specific parcel of property, the party challenging the act must first apply to the zoning authority for an exception or variance as provided under the ordinance. In the case of *Igna* v. *City of Baldwin Park* (1970) 9 Cal.App.3d 909 [88 Cal.Rptr. 581], an owner of three trailer parks constitutionally challenged a comprehensive zoning ordinance which required the owner to apply for a conditional use permit

because a trailer park was nonconforming activity in the new zone. Appellant owner had not applied for a conditional use permit. The court held that such a challenge to the ordinance must be preceded by an application to the city for a conditional use permit. The main thrust of the challenge was that the ordinance was invalid as it applied to the specific properties, not that it was invalid in general. (*Id.,* at p. 913.)

And in *United States* v. *Superior Court* (1941) 19 Cal.2d 189, 195-196 [120 P.2d 26], the court stated: "And even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held to be a prerequisite to equitable relief [citations]." The court goes on: "True, there are decisions dispensing with the administrative requirement and permitting immediate judicial interference where the statute, under attack as unconstitutional or invalid, creates the administrative board or establishes the method of administrative review [citations]. These cases were decided upon the theory that if the act be held unconstitutional *in toto,* the remedies provided thereby fall with it and, for that reason, need not be availed of by the litigant in the first instance. There is substantial authority to the contrary, however. [Citations.]" (See also Cal. Zoning Practice (Cont.Ed.Bar 1969) Availability of Remedy, § 12.19, pp. 518-519.)

Assuming the appellants are attacking the city's entire zoning ordinance including the sign regulations, they still are required to first exhaust the administrative remedies set out in the ordinance before seeking judicial relief. In *Dunham* v. *City of Westminster* (1962) 202 Cal.App.2d 245 [20 Cal.Rptr. 772], the plaintiffs-respondents did not challenge the city's zoning ordinance as it applied to their particular properties, but rather they challenged the basic authority of the city to require street dedication and construction of street improvements as a condition precedent to obtaining a building permit. The zoning ordinance provided for a variance but the plaintiffs-respondents refused to apply for a variance and brought the current action for a writ of mandate and declaratory relief contending the ordinance is unconstitutional and void. After a trial the court found the ordinance unconstitutional and issued a writ of mandate to compel the granting of a building permit. The city appealed and the Court of Appeal reversed because the refusal of the respondents to apply for a variance as set out in the ordinance foreclosed them from invoking judicial relief. Of interest to the case at bar is the following language of the court at page 250: "Respondent is not

precluded, if he has exhausted the administrative remedy, from challenging the constitutionality of the ordinance." (To the same effect, see *Metcalf* v. *County of Los Angeles, supra,* 24 Cal.2d 267; *Smith* v. *City of Duarte* (1964) 228 Cal.App.2d 267, 270 [39 Cal.Rptr. 524] [after stating that the plaintiff must first exhaust the administrative remedies set out in the ordinance before attacking its constitutionality, the court stated: "Once such action is taken, it will not preclude them from thereafter attacking the constitutionality of the questioned ordinance"]; *People* v. *Coit Ranch, Inc.* (1962) 204 Cal.App.2d 52, 60 [21 Cal.Rptr. 875] [referring to the exhaustion of the administrative remedy before attacking the constitutionality the court stated: "Exhaustion of that remedy does not foreclose it from raising the constitutionality of the statute in a subsequent judicial proceeding"].)

Similarly in the instant case if the appellants should apply for a variance as provided in the zoning ordinance and be denied such relief, they could thereafter in another judicial proceeding challenge the constitutionality of the entire ordinance or a particular provision therein as it affected their property and/or business.

The two federal cases cited by the appellants, *Staub* v. *City of Baxley* (1958) 355 U.S. 313 [2 L.Ed.2d 302, 78 S.Ct. 277], and *Shuttlesworth* v. *Birmingham* (1969) 394 U.S. 147 [22 L.Ed.2d 162, 89 S.Ct. 935], do not involve the same issues as the case at bar.

*Staub* involved a city ordinance which required a permit before one could solicit citizens to become a member of any organization, union or society. The ordinance on its face was an abridgment of the constitutional right of freedom of speech. The court held it was not necessary for the applicant to first seek a permit before attacking the constitutionality of the ordinance.

*Shuttlesworth* also involved a local ordinance which on its face was unconstitutional in that it "conferred upon the City Commission virtually unbridled and absolute power to prohibit any 'parade,' 'procession,' or 'demonstration' on the city's streets or public ways" without first securing a permit from the commission who were to be guided only by their own ideas of public welfare, peace, safety, health, decency, good order, morals or convenience. And in order to test the constitutionality of such an ordinance it was not required as a condition precedent that one first attempt to seek a license. In the words of the court, page 151 [22 L.Ed.2d

pages 167-168]: " 'The Constitution can hardly be thought to deny to one subjected to the restraints of such an ordinance the right to attack its constitutionality, because he has not yielded to its demands.' " In the instant case the sign regulations being challenged by the appellants are part of an overall zoning ordinance which extends to and includes all areas of the city and sets forth regulations for the signs in various areas of the city. The zoning ordinance itself is not being contested or challenged as an unlawful exercise of the police power. Only specific regulations of the sign ordinance as it affects the specific properties and/or business of the appellants are being challenged.

■ The first cause of action in the instant case is a class action suit by the appellant chamber of commerce as representative of all members of the chamber of commerce who are or might be adversely affected by the city's sign regulations. On the issue of first exhausting administrative remedies before seeking judicial relief, the fact that some of the appellants are proceeding via a class action does not per se make an exception to the exhaustion doctrine. (*Morton* v. *Superior Court, supra,* 9 Cal.App.3d 977.) ■ The doctrine of exhaustion of administrative remedies applies to class actions which raise constitutional issues. Each of the second through sixth causes of action is in the names of individual appellants who object to specific provisions of the sign ordinance as it applies to or affects their particular properties and/or business.[4]

■ Finally, the appellants contend that the exhaustion of administrative remedies is not required where public rights are involved, citing *Environmental Law Fund, Inc.* v. *Town of Corte Madera* (1975) 49 Cal.App.3d 105 [122 Cal.Rptr. 282].

The *Corte Madera* case was an action filed by an environmental nonprofit association (organized for the definite purpose of safeguarding the physical environment of the community) together with two residents of the town challenging the validity of a conditional use permit issued by the town planning commission and its approval of a tentative subdivision map. Although the city zoning ordinance provided for an appeal to the city council from any decision of the city planning commission, none of

---

[4]The third cause of action has become moot since the city attorney determined that the sign at 2250 Latham Street in Mountain View is not in violation since a variance was granted there in 1963.

the plaintiffs-respondents availed themselves of the administrative remedy. The trial court ordered the town to rescind its actions and to refrain from approving the map until an environmental impact report was prepared in compliance with state law. The Court of Appeal affirmed.

It should be noted that the *Corte Madera* ordinance provided for an appeal by the applicants or any other interested parties. The appellant Town of Corte Madera appealed claiming that since the applicants had not exhausted the administrative remedies provided under the ordinance, they are barred from judicial relief. The Court of Appeal refuted this contention, holding that since they were not parties to the proceedings before the planning commission they should not be barred from seeking judicial relief from governmental action taken in an administrative proceeding to which they were not a party with respect to rights which they hold as members of the affected public. The Court of Appeal in *Corte Madera* makes a distinction between situations wherein private or personal rights are affected by administrative proceedings as contrasted with one asserting public rights. Referring to the case where personal or private rights are affected, the court stated: "Where the exhaustion doctrine is applied to foreclose such persons from proceeding judicially, they incur the consequences of their own default; the rights of which they are denied enforcement in the judicial process are rights which they claim to hold personally or with a limited number of others identically situated; they who have defaulted as private persons are the only losers, and their private rights alone are lost." (*Id.,* at p. 112.) The opinion also states: "The exhaustion doctrine is frequently applied to bar the pursuit of a judicial remedy by a person to whom administrative action was available for the purpose of enforcing the right he seeks to assert in court, but who has failed to commence such action and is attempting to obtain judicial redress where no administrative proceeding has occurred at all." (*Ibid.*) As decided in *Corte Madera,* where public rights are being asserted, there is an exception to the rule that the claimant must first exhaust his administrative remedies before seeking judicial relief.

Having ruled that the respondents were asserting public rights, the *Corte Madera* court goes on: "Respondents are thus pursuing more than privately held rights, and are asserting more than privately held grievances: they are acting as members of the public and in the public

interest. Application of the exhaustion doctrine against them, by reason of their 'default' in the administrative proceeding to which they were not 'parties' at all; would mean in effect the imputation of their 'default' to the public in the absence of any factual basis for such imputation. In general, the doctrine would thus operate to bar the public from redressing a public wrong; specifically, it would burden the public of the Town, in perpetuity, with the illegal zoning of a substantial area of the community by insulating the zoning action from judicial review." (49 Cal.App.3d at p. 114.)

The chamber of commerce notes that the appeal provisions in *Corte Madera* applied to "interested" parties. The City of Mountain View is more restrictive and permits only "aggrieved" parties to appeal. Thus, the chamber of commerce asserts that it would not have had access to the appeal procedures. It should be pointed out, the city specifically permits an "owner or his agent" to apply for a variance. (Mountain View Mun. Code, § 36.44.) Clearly, the chamber of commerce could have qualified as the agent of any of its members if it had chosen to seek a variance. If it had received an adverse decision, it would have been an "aggrieved" party qualified to appeal to the city council. Failure to pursue that route is clearly the consequence of the chamber of commerce's own inaction, unlike the plaintiffs in *Corte Madera.*

Additionally it should be pointed out that some of the plaintiffs-appellants in the instant case were asserting violation of their private property rights and certainly they would be "aggrieved" parties under the Mountain View ordinance, entitled to pursue the administrative remedies provided for in the ordinance. Their failure to exhaust their administrative remedies bars them from seeking judicial review.

With respect to the appellants' claim that the chamber of commerce asserts public rights and that it represents the general public, the evidence before the trial court does not sustain that position. No evidence was presented to demonstrate that any nonbusinessmen were members of the chamber of commerce. To extend the doctrine of *Corte Madera* as sought by the appellants could erode the doctrine of exhaustion of administrative remedies (see dissent of Justice Caldecott in *Corte Madera, supra,* 49 Cal.App.3d at p. 120; see also Cal. Administra-

tive Mandamus (Cont.Ed.Bar 1977 Supp.) Exhaustion of Remedies is Jurisdictional Requirement, § 6.18, p. 72).

Judgment affirmed.

Sims, Acting P. J., and Elkington, J., concurred.