[Civ. No. 22322. Fourth Dist., Div. One. June 19, 1980.]

BETTY BARRY et al., Plaintiffs and Appellants, v.
CITY OF OCEANSIDE, Defendant and Respondent.

COUNSEL

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiffs and Appellants.

Ronald E. Null and Charles R. Revlett, City Attorneys, and Warren B. Diven, Assistant City Attorney, for Defendant and Respondent.

OPINION

COLOGNE, J.—Betty Barry and Larry Cohen (petitioners), doing business as Fun House Adult Book Store, appeal a judgment denying their petition for administrative mandamus following the revocation of their business license by the City of Oceanside.

Petitioners have operated an adult bookstore in the City of Oceanside for a number of years. In the rear of the store, there are four arcade booths, licensed under the peep show ordinance, which show sexually explicit movies. Between March 1976, and January 1978, 25 persons have been arrested for allegedly masturbating and, of that number, 18 have been convicted pursuant to guilty pleas of disturbing the peace or committing a public nuisance (Pen. Code, §§ 415, 370, 372).

On December 13, 1977, the business license inspector for the City of Oceanside initiated a license revocation proceeding against Barry and Cohen relative to the arrests at their place of business. There was no clear evidence the police contacted the licensees to advise them of the activities taking place in the arcade booths, but an employee of the petitioners was always present when an arrest was made.

The city proceeded under section 15.3(18) of the Oceanside City Code regarding the suspension or revocation of the business license "on the ground that the public health, welfare and safety is threatened and harmed due to the manner in which the business is operated."

After a hearing held December 13, 1978, before the assistant city manager (hearing officer) whose recommendation was approved by the city manager, the license was revoked. The petitioners appealed that decision to the Oceanside City Council which held a hearing on January 24, 1979. The council, on a three-to-two vote, revoked the business license.

When petitioners first received notice of the action the city intended to take, they posted notice warning patrons not to engage in lewd activity and suggested it would lead to arrest and convictions. Since that

posting, there have been no further arrests. Stays have been in effect since the first hearing so that petitioners have continued to operate the business.

■ Petitioners contend Oceanside City Code section 15.3(18), which authorizes the revocation of a business license, is unconstitutional. That section reads: "A business license shall be subject to suspension and/or revocation by the license inspector with concurrence of the City Manager...whenever the public health, welfare, or safety is harmed or threatened due to...the manner in which the business is operated." They contend *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656 [97 Cal.Rptr. 320, 488 P.2d 648], controls. In that case, the court held an ordinance that would deny a business license to operate a bookstore solely because the proprietor had been convicted of a crime is unconstitutional. The court there said: "Although the activity of selling or distributing books is not exempt from reasonable regulation, it is entitled to First Amendment protection [citations]. Statutes which authorize public officials to license conduct protected by the First Amendment must set forth definite, objective guidelines for the issuance of such licenses. [Citations.] Accordingly, statutes which have empowered public officials to exercise their discretionary authority with respect to First Amendment activities in light of...the anticipated effect of his conduct upon the 'public welfare or morals' (*Staub* v. *City of Baxley*...355 U.S. 313, 315...; *Shuttlesworth* v. *Birmingham*...394 U.S. 147, 151...)...have been held to be unconstitutionally vague and overbroad. The danger of censorship and arbitrary suppression inherent in the employment of such imprecise standards is so great that the voiding of these regulations is required even in the absence of proof of actual discrimination (*Burton* v. *Municipal Court*,...68 Cal.2d 684, 696; *Interstate Circuit, Inc.* v. *City of Dallas*,...390 U.S. 676, 689-690...). Since statutes which accord officials excessive discretion are unconstitutional on their face, a fortiori, those which vest unlimited discretionary power to issue or deny permits to engage in First Amendment activities are unconstitutional. (*Kunz* v. *New York*...340 U.S. 290...; *Lovell* v. *Griffin*...303 U.S. 444....)" (*Id.*, at pp. 661-662.)

The city's contention, in effect, is this is far different from merely operating a business which because of the offensive conduct occurring on the premises has become a public nuisance. It contends it was acting within lawful police power to close down this store.

The city relies on *Sunset Amusement Co.* v. *Board of Police Commissioners* (1972) 7 Cal.3d 64 [101 Cal.Rptr. 768, 496 P.2d 840], involving business licensing of a roller skating rink. In that case, the Supreme Court examined a similar ordinance which provided the denial of a permit renewal "'if the Board finds that the said operation will not comport with the peace, health, safety, convenience...and general welfare of the public or that facts exist upon which a denial of such permit would be authorized pursuant to this Article.'" In *Sunset Amusement Co.*, there was a specific finding the business was operating so as not to comport with the "' peace, health, safety, convenience, good morals and general welfare of the public'" (*id.*, at pp. 71-72, 81). Similarly, here, the trial court's finding is the licensees were "operating or at least condoning an ongoing public nuisance, which is contrary to the public health, safety and welfare." There, as here, patrons were arrested for criminal acts committed in the immediate vicinity of the premises. *Sunset Amusement Co.*, however, did not present a factual setting where a First Amendment right was in issue. No bookselling or motion picture showing was involved. The court specifically found the physical activity of a skating rink is not within the ambit of the First Amendment at least in the absence of some element of communication or advancing ideas or beliefs (*id.*, 7 Cal.3d at p. 74). Its application to the situation involving a bookstore is distinguishable.

█ As the court in *Sunset Amusement Co.* observed, a municipality has broad powers to enact "'all local police, sanitary, and other ordinances and regulations not in conflict with general laws.' (Cal. Const., art. XI, § 7.)" Such an ordinance is ordinarily upheld "if 'it is reasonably related to promoting the public health, safety, comfort, and welfare, and if the means adopted to accomplish that promotion are reasonably appropriate to the purpose. [Citations.]' (*Higgins* v. *City of Santa Monica*, 62 Cal.2d 24, 30...)." (*Sunset Amusement Co., supra*, 7 Cal.3d at p. 72.)

█ Nevertheless, First Amendment activities necessarily subject licensing ordinances to strict scrutiny (*Perrine* v. *Municipal Court, supra*, 5 Cal.3d 656, 661-663). The fact an ordinance seems to vest unlimited discretion in the licensing agency does not necessarily invalidate the ordinance, for "'the same might be said of almost any licensing board established under the laws of this state; discretion is not uncontrolled and unguided if it calls for the exercise of judgment of a high order'" (*Sunset Amusement Co., supra*, 7 Cal.3d 64, 73; see *O'Hagen* v. *Board of Zoning Adjustment* (1971) 19 Cal.App.3d 151, 160-161 [96

Cal.Rptr. 484], where "good cause" standard is upheld when there is a proper finding). A municipality may impose reasonable regulations upon the conduct of an economic enterprise (*In re Porterfield* (1946) 28 Cal.2d 91, 101 [168 P.2d 706, 167 A.L.R. 675]), including the business of operating a motion picture theater (*Tarbox* v. *Board of Supervisors* (1958) 163 Cal.App.2d 373, 377 [329 P.2d 553]).

The constitutionality of an ordinance prescribing standards under which the licensing agency must act in determining whether to issue a permit to a business within the ambit of the First Amendment was examined in *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, at pages 691 to 693 [68 Cal.Rptr. 721, 441 P.2d 281]. Licensing of a First Amendment protected motion picture exhibitor was involved in *Burton*.[1] There, the court said ""precision of regulation must be the touchstone"" [citations] and the standards set forth therein must be 'susceptible of objective measurement' [citations]" (*id.*, at p. 691).

In *Burton*, the court had before it an ordinance very similar to the one here in issue, empowering the licensing agency to refuse a permit if it finds "the said operation will not comport with the peace, health, safety, convenience, good morals and general welfare of the public." In this regard, the court concluded at page 692 the ordinance in question contained "overly broad standards [which] are fraught with the hazard that an applicant will be denied his rights to free speech and press through exercise of the power of the board, in its discretion, to refuse a permit because of the content of the films which the applicant exhibits in his theater."

"Section 103.31(b), under which the board may deny a permit 'for a business which has been or is a public nuisance' is likewise defective. The Civil Code defines a nuisance as 'Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property, or unlawfully obstructs the free passage or use, in the customary manner, of any...public park, square, street, or highway....' (Civ. Code, § 3479.) Section 3480 defines a public nuisance as 'one which affects at the same time an entire community or neigh-

---

[1]Actually, the theater operators were charged with the misdemeanor offense of engaging in that business without having the annual permit. The court in *Burton*, however, considered the same ordinance and standard for denying a license as was involved in the *Sunset Amusement Co.* case, *supra*, 7 Cal.3d 64, 73.

borhood, or any considerable number of persons....' (See also Pen. Code, §§ 370, 371.)

"The provisions of section 103.31(b) are no less vague than those of sections 103.29(b) and 103.31(c)1. To permit a board to refuse to grant a license for the operation of a motion picture theater because in its subjective opinion the operation may be 'indecent or offensive to the senses...so as to interfere with the comfortable enjoyment of life or property' of 'any considerable number of persons' obviously vests in the board an exorbitant quantum of discretion and fails to meet the constitutional requirement of narrowly circumscribed standards." (*Burton* v. *Municipal Court, supra*, 68 Cal.2d 684, at p. 692.)

The ordinance in question does not expressly proscribe a public nuisance, but assuming it does, as did the trial court, even this classification bears the same vagueness in the context of activities protected by the First Amendment, as discussed in *Burton* at 68 Cal.2d, pages 692 to 693.

While the court in *Burton* asserts the communicated information was protected and could not be made the subject of a "public nuisance proceeding," here, sexual amusement was intended, not a crime in itself, and that could not be found to be a "public nuisance" under circumstances where there is nothing to suggest the petitioners sought the response their patrons exhibited (see *Tarbox* v. *Board of Supervisors, supra*, 163 Cal.App.2d 373, 377-378; cf. *People* v. *Mitchell* (1976) 64 Cal.App.3d 336, 340 [134 Cal.Rptr. 358]).

*Burton* applies "only to those situations in which the operation of a licensing ordinance impinges upon the exercise of First Amendment activities" (see *Sunset Amusement Co.* v. *Board of Police Commissioners, supra*, 7 Cal.3d 64, 72). That is the type of activity, bookselling and motion picture showing, which is involved here. The rule of the *Burton* and *Perrine* cases applies here and the ordinance cannot be constitutionally used against the business involved in this case in the manner attempted.[2] As so used, the ordinance is unconstitutionally vague, overbroad and a prior restraint against First Amendment protected activity.

---

[2]Although the parties do not cite the case to us, we feel compelled to note *People* ex rel. *Busch* v. *Projection Room Theater* (1976) 17 Cal.3d 42 [130 Cal.Rptr. 328, 550 P.2d 600], states the following applicable principle at page 59: "...[there are] no re-

This is not to say that illegal sexual acts, indecent exposure, or other criminal acts by the customers must be condoned; we only assert that in these cases the governing board must spell out with reasonableness and definiteness what constitutes a "public nuisance" justifying the denial of a license. The Oceanside City Council has not done this.

Under the doctrine of stare decisis, we are bound by the *Burton* and *Perrine* decisions (*Auto Equity Sales, Inc.* v. *Superior Court* (1962) 57 Cal.2d 450, 455 [20 Cal.Rptr. 321, 369 P.2d 937]), however dissatisfied we might be with the result in this case. As suggested in *Burton*, however, the law provides ample methods of eliminating the nuisance by way of indictment or information, or by bringing of a civil suit on an action for abatement (Civ. Code, § 3491; *Burton* v. *Municipal Court, supra,* 68 Cal.2d 684, 693). And, as we have seen, it is within the authority of the municipal legislative body to prescribe with more certainty what constitutes a public nuisance (Gov. Code, § 38771; *City of Bakersfield* v. *Miller* (1966) 64 Cal.2d 93, 100 [48 Cal.Rptr. 889, 410 P.2d 393]).

In the light of our holding the ordinance violative of petitioners' constitutional rights, it is unnecessary to consider whether proceeding under the peep show ordinance, rather than the business license ordinance, is required; whether the findings are supported by the evidence; and whether the remedy is too severe.

Judgment reversed with directions to issue a peremptory writ of mandate as prayed.

Brown (Gerald), P. J., and Hamrick, J.,* concurred.

---

ported cases authorizing the closing of a bookstore or theater, even after it has been repeatedly determined judicially in a full adversary hearing that all or substantially all of the magazines or films exhibited or sold therein are obscene.... [W]e emphasize that the closing of such bookstores or theaters, either temporarily or permanently, ...constitutes an impermissible prior restraint in violation of the First and Fourteenth Amendments to the United States Constitution."

*Assigned by the Chairperson of the Judicial Council.