[Civ. No. 23649. Fourth Dist., Div. Two. Mar. 18, 1981.]

HELEN EBEL, Plaintiff and Appellant, v.
CITY OF GARDEN GROVE, Defendant and Respondent.

[Civ. No. 23656. Fourth Dist., Div. Two. Mar. 18, 1981.]

RANDALL WELTY, Plaintiff and Appellant, v.
CITY OF GARDEN GROVE, Defendant and Respondent.

COUNSEL

Hecht, Diamond & Greenfield and Roger Jon Diamond for Plaintiffs and Appellants.

Eric Lauterer, City Attorney, and William P. McNames, Deputy City Attorney, for Defendant and Respondent.

OPINION

McDANIEL, J.—These two cases present the same issue, namely whether Garden Grove's Ordinance No. 1116, which requires all businesses to obtain conditional use permits before they can legally sell or display any "adult" materials, e.g., so-called adult books, magazines and motion pictures, is vague and as such unconstitutional on its face. This requirement applies to all businesses regardless of their location within the municipality.[1]

Plaintiffs lease certain premises in an area zoned for commercial use in the City of Garden Grove, and they intend to operate retail stores out of these rented premises. Plaintiffs admit that they intend to use the premises to sell books, magazines, and related material, the reading of some of which is proscribed for minors. Consequently, the city attorney has threatened to initiate criminal prosecutions against plaintiffs if they sell even one adult magazine without first obtaining a conditional use permit.

Plaintiffs thereupon sought both injunctive and declaratory relief from the trial court to enjoin the City of Garden Grove, both preliminarily and permanently, from enforcing its permit requirements against them and to declare that they need not obtain conditional use permits to operate their bookstores. The trial court concluded that the ordinance is constitutionally valid on its face and within permissible parameters of the city's police power. It refused to grant the relief sought by plaintiffs and ruled also that they had not exhausted their administrative remedies in that they had not applied for the appropriate permits.

Plaintiffs challenge the validity of the ordinance on several grounds. Their principal contentions are: (1) that the absence of objective and definite standards for the issuance of the conditional use permit renders the ordinance unconstitutional on its face;[2] (2) that even if the exces-

---

[1] The ordinance requires that all zones, whether classified or unclassified for certain uses, are subject to the same conditional use permit requirement concerning the sale and display of adult materials. These requirements are listed as "Limitations on Permitted Uses."

[2] Plaintiffs rest their constitutional argument upon the First and Fourteenth Amendments of the United States Constitution and article I, section 2 of the California Constitution. We will collectively refer to the rights involved as First Amendment rights.

sively vague standards are satisfied, there is no guarantee a permit will issue because it is within the sole discretion of the zoning administrator to grant or deny the permit; and (3) the ordinance violates equal protection guarantees of the United States and California Constitutions because the discrimination is based upon the content of the books and other material proposed to be sold.[3]

Plaintiffs further argue that injunctive and declaratory relief is particularly appropriate where the statute or ordinance itself is unconstitutional on its face. However, the City of Garden Grove argues that it is within a municipality's proper police powers to regulate First Amendment rights through land use regulation procedures and that the particular ordinance at issue sets standards that are constitutionally plain. Further, the City of Garden Grove argues that plaintiffs lack standing to seek injunctive relief because they have not exhausted their administrative remedies, i.e., they have not applied for conditional use permits.

## DISCUSSION

Ordinance No. 1116[4] which is at issue in this case, reads: "A Conditional Use Permit shall be required for any business establishment in which all, or any portion, of said business premises is devoted to the sale or display of any book, magazine, newspaper, or other printed or written material or any picture, drawing, photograph, motion picture or other pictorial representation or any statue or other figure, or any recording, transcription, or mechanical, chemical or electrical reproduction, or any other articles, equipment, machines, or materials, which aforementioned enumerated materials, by any means or in any manner, are either:

"1) In fact forbidden to be sold or otherwise distributed to minors under the age of twenty-one (21) years, or

---

[3]We do not address the issue of the ordinance's content neutrality because of our resolution of the appeals on other grounds.

[4]The ordinance was enacted on May 26, 1970, and the same language of the ordinance provision is repeated in 12 sections of the Garden Grove Municipal Code, i.e., sections 9207-1(e), 9208-1(g), 9209-1(f), 9210-1(e), 9211-1(e), 9212-1(d), 9213-1(h), 9213 A-4, 9213 B-2(e) 9213 C-2(g), 9213 E-3(k), and 9214-6. Each section concerns the limitations on permitted uses for the various zones within the City of Garden Grove.

"2) Advertised as being forbidden to be sold or otherwise distributed to minors under the age of twenty-one (21) years."[5]

To obtain the necessary permit, an application must be filed with the Zoning Administrator of Garden Grove who is authorized to grant such applications.[6] The municipal code[7] requires that the application for a conditional use permit "sets forth fully the grounds for, and the facts deemed to justify the granting of the ... conditional use permit." A public hearing is scheduled, with notice of the hearing to be mailed to all owners of property within 300 feet of the subject property. After the public hearing, the zoning administrator must either grant or deny the application and state the reasons for the granting or denial of it.[8] The zoning administrator's decision may be appealed to the city council.

There is no section per se in Garden Grove's Municipal Code that sets out the criteria for the issuance of a conditional use permit. However, section 9219.4 states the purpose of conditional use permits. It reads: "The purpose of a Conditional Use Permit shall be: [¶] (a) To assure that the degree of compatibility made the purpose of this Chapter shall be maintained with respect to the particular use on the

---

[5]Section 1.04.010 of the Garden Grove Municipal Code states, "Any person violating any of the provisions or failing to comply with any of the mandatory requirements of this code is guilty of a misdemeanor. Any person convicted of a misdemeanor under this code shall be punished by a fine of not more than five hundred dollars, or by imprisonment not to exceed six months, or by both such fine and imprisonment. Each such person shall be guilty of a separate offense for each and every day during any portion of which any violation of this code is committed, continued, or permitted by any such person, and he shall be punished accordingly."

[6]Section 9219.3 of the Garden Grove Municipal Code provides: "The Zoning Administrator is empowered to consider any Conditional Use Permit application except those associated with a site plan which includes a change of zone. Such Conditional Use Permits shall be considered by the Planning Commission concurrently with the site plan application."

[7]All code references hereinafter are to the Garden Grove Municipal Code unless otherwise specified.

[8]Section 9219.9 reads: "Not more than thirty days following the termination of proceedings of the public hearing on an application for a variance, conditional use permit, unclassified use permit or site plan, the Planning Commission or the Zoning Administrator, as the case may be, shall announce findings and an order in writing. Said Order shall recite, among other things, the facts and reasons which, in the opinion of the Planning Commission or Zoning Administrator, make the granting or denial of the application necessary to carry out the provisions and general purpose of this chapter. Such order shall direct that the application be either granted or denied. If the application is granted, the Order shall also recite such conditions and limitations as the Planning Commission or Zoning Administrator may impose."

particular site and in consideration of other existing and potential uses and improvements within the general area in which such is proposed to be located; and [¶] (b) To recognize and compensate for variations and degree of technological processes and equipment as related to the factors of noise, smoke, dust, fumes, vibration, odors, and hazard or public need."

## I

■ The law is clear that a municipality has the general power to regulate commercial businesses where the regulation is reasonable and nondiscriminatory. (*People* v. *Glaze* (1980) 27 Cal.3d 841, 845 [166 Cal.Rptr. 859, 614 P.2d 291]; see *Burton* v. *Municipal Court* (1968) 68 Cal.2d 684, 689 [68 Cal.Rptr. 721, 441 P.2d 281].) ■ Although the activity of selling or distributing books is not exempt from reasonable regulation, it is entitled to First Amendment protections. (*Smith* v. *California* (1959) 361 U.S. 147, 150 [4 L.Ed.2d 205, 209, 80 S.Ct. 215]; *Perrine* v. *Municipal Court* (1971) 5 Cal.3d 656, 661 [97 Cal. Rptr. 320, 488 P.2d 648].) ■ In considering the constitutionality of ordinances that regulate conduct protected by the First Amendment, "'precision of regulation must be the touchstone.'" (*Burton* v. *Municipal Court, supra*, 68 Cal.2d 684, 691, citing *Interstate Circuit, Inc.* v. *City of Dallas* (1968) 390 U.S. 676, 682 [20 L.Ed.2d 225, 231, 88 S.Ct. 1298].

Thus, statutes which authorize public officials to license conduct protected by the First Amendment must set forth definite, objective guidelines for the issuance of such licenses. (*Staub* v. *City of Baxley* (1958) 355 U.S. 313, 321-322 [2 L.Ed.2d 302, 311, 78 S.Ct. 277]; *Perrine* v. *Municipal Court, supra*, 5 Cal.3d 656, 661; *Burton* v. *Municipal Court, supra*, 68 Cal.2d 684, 691; *Barry* v. *City of Oceanside* (1980) 107 Cal.App.3d 257, 260 [165 Cal.Rptr. 697].) Where zoning —conditional use—ordinances seek to regulate the operation of adult bookstores, the same definite and objective guidelines must be used for the issuance of permits as for the issuance of such licenses. (*City of Imperial Beach* v. *Palm Avenue Books, Inc.* (1981) 115 Cal.App.3d 134, 138, 140 [171 Cal.Rptr. 197].)

In *Barry* v. *City of Oceanside, supra*, 107 Cal.App.3d 257, the city council revoked the business license of an adult bookstore on the ground that it was a threat to "the public health, welfare and safety" as per the city ordinance. Similarly, in *Burton* v. *Municipal Court, supra*, 68

Cal.2d 684, 692, an ordinance empowered the licensing agency to refuse a permit to operate a motion picture theater if it finds that "the said operation will not comport with the peace, health, safety, convenience, good morals, and general welfare of the public."

The ordinance further authorized denial of the permit "for a business which has been or is a public nuisance." The "public nuisance" standard was defined by the Civil Code as "Anything which is injurious to health, or is indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere with the comfortable enjoyment of life or property . . . ." "Public nuisance" was further defined by another section of the Civil Code as "one which affects at the same time an entire community or neighborhood, or any considerable number of persons . . ." (*Id.* at pp. 692-693.)

On appeal, both *Barry* and *Burton* held that the ordinances at issue were subject to subjective enforcement and thus vague, overbroad, and a prior restraint against First Amendment protected activity.

In *City of Imperial Beach* v. *Palm Avenue Books, Inc., supra,* 115 Cal.App.3d 134), our colleagues at Division One of the Fourth District struck down an ordinance, much the same as the ordinance in issue herein, one which required conditional use permits for the operation of adult bookstores and of adult motion picture theaters. The City of Imperial Beach demanded that the defendant book store first obtain a conditional use permit, but the defendant refused to submit an application. The court affirmed the trial court's ruling that the ordinance was unconstitutionally vague and overbroad. Portions of the ordinance read: "Issuance criteria. After the public hearing, the planning commission may, by resolution, grant a conditional use permit if the commission finds, from the evidence presented in the application or at the hearing, that all of the following facts exist: [¶] A. That the proposed use at the particular location is necessary or desirable to provide a service or facility which will contribute to the general well-being of the neighborhood or community; [¶] B. That such use will not, under the circumstances of the particular case, be detrimental to the health, safety, or general welfare of persons residing or working in the vicinity, or injurious to property or improvements in the vicinity; [¶] C. That the proposed use will comply with the regulations and conditions specified in this title for such use and for other uses permitted in the same zone; [¶] D. That the granting of such conditional use will be in harmony

with the purpose and intent of this title and the general plan of the city."

Subsections "C" and "D" of the Imperial Beach ordinance utilized a compatibility standard, one wherein the proposed use must comply with the conditions for other uses within the same zone and with the purpose of the general plan of the city. Similarly, Garden Grove's section 9219.4(a) also uses a compatibility standard, one wherein the purpose of a conditional use permit is to assure compatibility of the proposed use with other uses within the general area.[9]

In addition, Garden Grove's section 9219.4(b) uses precisely the same criteria condemned as unconstitutional in *Barry*, *Burton*, and *City of Imperial Beach.* Section (b) states that the proposed use be sensitive to "variations and degree of technological processes and equipment as related to the factors of noise, smoke, dust, fumes, vibration, odors, and hazard or public need." This standard virtually mirrors that in *Barry* ("the public health, welfare, and safety"), in *Burton* ("injurious to health, or is indecent or offensive to the senses") and in *City of Imperial Beach* ("the general well-being of the neighborhood or community"). These sections set up a "subjective" standard incapable of the precise "objective" measurement demanded by First Amendment protections and "the vice of vagueness is particularly pronounced where *expression* is subjected to licensing." (See *City of Imperial Beach* v. *Palm Avenue Books, Inc., supra*, 115 Cal.App.3d 134, 139.)

## II

In both *Dillon* v. *Municipal Court* (1971) 4 Cal.3d 860 [94 Cal.Rptr. 777, 484 P.2d 945] and *Perrine* v. *Municipal Court, supra*, 5 Cal.3d 656, the California Supreme Court struck down ordinances which provided that the authorities "may" issue parade permits and licenses to

---

[9]At oral argument, the City of Garden Grove attempted to distinguish *City of Imperial Beach* v. *Palm Avenue Books, Inc., supra*, 115 Cal.App.3d 134 from the case before us. It argued, because the court in *City of Imperial Beach* held only that sections A and B of the Imperial Beach ordinance were vague, uncertain, and overly broad (*id.* at pp. 138-139), that sections C and D, which are similar to the provisions before us, were not. However, such argument is without merit, for, although *City of Imperial Beach*, in its analysis examined only the text of sections A and B, it nevertheless held ultimately that the *entire* ordinance, as written, conferred unlimited discretion upon the licensing authority to issue or deny the permit, and for this reason was unconstitutional *in its entirety.* (*Id.* at p. 139.) As structured, the holding is therefore controlling here.

operate bookstores, respectively, if certain findings are made. The court held that the ordinances conferred on the authorities unlimited authority to deny any application. "Thus there is 'no guarantee that a permit will issue even if the application meets all of the . . . conditions of the section.'" (*Perrine* v. *Municipal Court, supra,* 5 Cal.3d 656, 662, citing *Dillon* v. *Municipal Court, supra,* 4 Cal.3d 860, 870.) ■ "Since statutes which accord officials excessive discretion are unconstitutional on their face, a fortiori, those which vest unlimited discretionary power to issue or deny permits to engage in First Amendment activities are unconstitutional." (*Id.* at p. 662, citing *Kunz* v. *New York* (1951) 340 U.S. 290 [95 L.Ed. 280, 71 S.Ct. 312].)

In the ordinance at issue here, there is no apparent requirement that the zoning administrator grant the conditional use permit. Section 9219.9 merely requires, after a hearing, that the administrator "shall direct that the application be either granted or denied." Thus, under *Dillon* and *Perrine*, and more immediately under the *City of Imperial Beach* case decided by the First Division of our own district, we hold that the City of Garden Grove ordinance is unconstitutional on its face, mainly because there is no assurance that a permit will ever issue under any circumstance.[10]

## III

■ The City of Garden Grove argues that plaintiffs lack standing because they have failed to exhaust their administrative remedies. It relies upon *Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82 [143 Cal.Rptr. 441], for that proposition. However, that case is not on point because the plaintiffs there did not attack or challenge the at issue zoning ordinance itself as an unlawful exercise of the police power, but instead challenged only specific regulations of the ordinance that required removal of nonconforming signs and billboards as they affected the specific businesses of the plaintiffs. In any event, it has been stated by the California Supreme Court that a person has standing to challenge an ordinance or a statute invalid on its face without first exhausting the licensing or permit procedures. (*City of Santa Barbara* v. *Adamson* (1980) 27 Cal.3d 123, 135, 137 [164 Cal.Rptr. 539, 610 P.2d 436]; *Burton* v. *Municipal Court, supra,*

---

[10]Plaintiffs point out that according to the City Attorney of Garden Grove, no bookstore selling adult materials or theater applicant has ever received approval of a conditional use permit, despite the ordinance's existence since 1970.

68 Cal.2d 684, 687-689.) The ordinance here under consideration comes within the ambit of this rule.

## IV

■ The City of Garden Grove further argues that Code of Civil Procedure section 526, second subdivision 4 prohibits injunctive relief to plaintiffs. It reads: "An injunction cannot be granted: ... To prevent the execution of a public statute by officers of the law for the public benefit; ..."

However, the California Supreme Court in *Conover v. Hall* (1974) 11 Cal.3d 842 [114 Cal.Rptr. 642, 523 P.2d 682], rejected the argument that the trial court lacked jurisdiction to enjoin the enforcement of a duly enacted statute pursuant to Code of Civil Procedure section 526, second subdivision 4. It stated: "A host of cases interpreting [this section] have made it clear, however, that their provisions do not apply to an unconstitutional or invalid statute or ordinance and that courts have full authority to enjoin the execution of such enactments. [Citations.]" (*Id.* at pp. 849-850; see also *Kash Enterprises, Inc. v. City of Los Angeles* (1977) 19 Cal.3d 294, 299 [138 Cal.Rptr. 53, 562 P.2d 1302] where the court concluded that the trial court erred in refusing to grant a preliminary injunction as to the portion of an ordinance that was unconstitutional on its face.)

Moreover, it is well settled that where the enforcement of an ordinance may cause irreparable injury, the injured party may attack its constitutionality by an action to enjoin its enforcement. (*McKay Jewelers, Inc. v. Bowron* (1942) 19 Cal.2d 595, 599 [122 P.2d 543, 139 A.L.R. 1188]; see Code Civ. Proc., § 526, 1st subd. 2; *Abbott v. City of Los Angeles* (1959) 53 Cal.2d 674, 678, fn. 2 [3 Cal.Rptr. 158, 349 P.2d 974].) It has been recognized that threatened arrest by the authorities or discontinuance of the method of conducting a business because of fear of arrest and prosecution is sufficient to show "irreparable injury." (*McKay Jewelers, Inc. v. Bowron, supra*, 19 Cal.2d 595, 599.)

Following the analysis of our colleagues in the First Division, we conclude that Ordinance No. 1116 of the City of Garden Grove is unconstitutional on its face. It necessarily follows that plaintiffs had standing to sue to seek an injunction against enforcement of the ordinance without first applying for a conditional use permit and being turned down.

DISPOSITION

The judgment is reversed, and the trial court is directed to enter a new and different judgment, one enjoining enforcement of the ordinance noted.

Kaufman, Acting P. J., and Goldstein, J.,* concurred.

**KAUFMAN, Acting P. J.,** Concurring and Dissenting.—I concur in the order denying the petition for rehearing, but I do not concur in the modification of the opinion originally filed. Section 9219.9 expressly requires the order to specify the reasons found by the planning commissioner or zoning administrator for denying or granting an application. Such requirement obviously contemplates review for arbitrariness or caprice and necessarily imports that granting or denying an application is mandatory in some circumstances. If the ordinance could be saved by so construing it, I would so construe it. But the vice of the ordinance is that the standards, if any, set forth are so vague that uniform application and review for abuse of discretion are virtually impossible.

If, of course, a new ordinance is to be enacted, it should plainly provide that issuance of a license is mandatory if the standards set forth in the ordinance are met. Then no court will be called upon to save the ordinance's validity by construction.

A petition for a rehearing was denied April 14, 1981.

---

*Assigned by the Chairperson of the Judicial Council.