[Civ. No. 37127. First Dist., Div. Two. Nov. 1, 1976.]

ROBERT A. GRISWOLD, Plaintiff and Appellant, v.
MT. DIABLO UNIFIED SCHOOL DISTRICT,
Defendant and Appellant.

## Counsel

White, Giambroni & Walters and Gerald W. McGee for Plaintiff and Appellant.

John B. Clausen, County Counsel, Harlan E. Van Wye and Gerald A. Becker, Deputy County Counsel, for Defendant and Appellant.

## Opinion

**BRAY, J.**\*—Robert A. Griswold (hereafter referred to as petitioner or appellant) appeals from that portion of the judgment of the Contra Costa County Superior Court which denied appellant's petition for a writ of mandate requesting that Mt. Diablo Unified School District (hereafter referred to as respondent or cross-appellant) be required to set aside its decision dismissing appellant from his post as English department chairman at Pacifica High School. Respondent and cross-appellant Mt. Diablo Unified School District appeals from that portion of the judgment which granted the petition for writ of mandate setting aside the district's decision to transfer appellant to another high school.

### Issues Presented

1) Appeal from the ruling removing appellant as department chairman.

   a) The doctrine of exhaustion of remedies is applicable.

   b) The constitutional issue was not raised during the grievance proceedings.

   c) Appellant was not prevented from raising any constitutional issue.

2) Appeal from the ruling setting aside respondent's decision to transfer appellant to another high school.

   a) The criminal remedy for violation of the Brown Act is exclusive.

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

## Record

During the school years 1971-1972 and 1972-1973, appellant was a certificated employee of the Mt. Diablo Unified School District and served as a teacher of English and as chairman of the English department at Pacifica High School. On May 22, 1972, appellant was notified by Mr. Loren Fickett, principal of Pacifica High School, that he was to be relieved as English department chairman as of the beginning of the 1972-1973 school year. Thereafter, Mr. Fickett rescinded this decision, but then indicated that appellant would be removed as chairman as of the beginning of the 1973-1974 school year. On April 9, 1973, Mr. Fickett wrote to appellant and repeated his intention not to reappoint him as chairman for the 1973-1974 school year. Therefore, on April 12, 1973, appellant initiated a grievance procedure by letter to the principal. He continued to press his grievance at each of four levels, being denied relief at each level. The procedures consisted of conferences with Dr. Lloyd Gass, assistant superintendent, Dr. Merrihew, superintendent, and finally three appearances before the Governing Board of the Mt. Diablo Unified School District. Ultimately, the board rendered a decision adverse to appellant on July 9, 1973. Throughout these grievance procedures and in accordance with the district's grievance policy, appellant was represented by a fellow teacher at Pacifica High School, Mr. James Kroll.

While these grievance proceedings were in progress, appellant was informed that he was to be transferred from Pacifica High School. Appellant then initiated a second grievance procedure and prosecuted it through all four levels without relief.

Thereafter, appellant filed a petition for a writ of mandate asking the court to set aside the decisions discharging him as department chairman and transferring him from Pacifica High School, alleging that the motive for such actions was his exercise of protected First Amendment rights. After a hearing the court held that appellant had failed to exhaust his administrative remedies and had failed to raise constitutional arguments at any of the grievance levels. The court then denied that portion of the petition for writ of mandate which requested respondent to set aside its decision ousting appellant from his post as chairman but granted the portion of the petition for writ of mandate which requested respondent be ordered to set aside its decision to transfer appellant to another school in the district. Appellant appeals from the ruling denying his petition to set aside the decision removing him as chairman. Respondent appeals

from the ruling ordering it to set aside its transfer of appellant to another school. We are first concerned with appellant's appeal from the ruling removing him as department chairman.

1) *Appeal from the ruling removing appellant as department chairman.*

a) *The doctrine of exhaustion of remedies is applicable.*

Appellant contends that the doctrine of exhaustion of administrative remedies should not be applied to the instant case. Appellant argues if this court finds that he did not raise the issue of whether his First Amendment rights had been violated in the grievance procedure, that he should have been allowed to raise it for the first time in the lower court. Appellant relies on *Egan* v. *Teets* (9th Cir. 1957) 251 F.2d 571, 576 and *Preston* v. *Municipal Court* (1961) 188 Cal.App.2d 76, 82 [10 Cal.Rptr. 301], for the proposition that a constitutional question may be raised at any time if the matter appears on the face of the record or if it is of such nature that it could not have been raised before.

In *Savoy Club* v. *Board of Supervisors* (1970) 12 Cal.App.3d 1034, 1042 [91 Cal.Rptr. 198], the court quoted *Jenner* v. *City Council* (1958) 164 Cal.App.2d 490, 498 [331 P.2d 176], for the general rule applicable in civil cases that a constitutional issue must be raised at the earliest opportunity or it will be deemed waived. The court in *Savoy* continued: "To us it seems that the additional constitutional issues here presented properly should have been urged at the administrative level and not on the piecemeal basis here adopted by petitioners." (*Savoy Club, supra.*)

Even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held a prerequisite to equitable relief. (*United States* v. *Superior Court* (1941) 19 Cal.2d 189, 194-195 [120 P.2d 26]; *Robins* v. *County of Los Angeles* (1966) 248 Cal.App.2d 1, 13 [56 Cal.Rptr. 853].) In *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 984 [88 Cal.Rptr. 533], the court stated: "In *United States* v. *Superior Court, supra,* 19 Cal.2d 189, the California Supreme Court held that the exhaustion doctrine not only applies to orders which are erroneous but also to those assailed as nullities because illegally adopted. In *Security First Nat. Bank* v. *County of Los Angeles,* 35 Cal.2d 319, 321 [217 P.2d 946], our Supreme Court held that resort to the administrative remedy was required even though the statute sought to be

applied and enforced by the administrative agency was challenged upon constitutional grounds."

Although there are exceptions to the rule that appellate courts will not ordinarily consider matters tardily raised, the situation in the case at bench is not one of them. They are situations wherein the issue relates to questions of law alone or where questions of public policy are involved. (*Bayside Timber Co.* v. *Board of Supervisors* (1971) 20 Cal.App.3d 1, 5 [97 Cal.Rptr. 431].) The exhaustion doctrine is applicable in the instant case since the constitutional issue which appellant desires to raise presents mixed questions of law and fact.

As discussed below the exceptions that appellant relies upon for not invoking the general exhaustion of remedies rule also do not apply in this case as no constitutional issue appears on the face of the record and appellant was not prevented from raising any constitutional issue.

b) *The constitutional issue was not raised during the grievance procedures.*

The sole constitutional issue raised by appellant is that he was "removed as Chairman because he had voiced disagreement with administrators or administrative policies." In the entire body of a 449-page transcript the only reference to a constitutional issue appears in the declaration of James Kroll, who represented appellant. He states: "At a Level II Grievance conference on 5-1-73 with the Assistant Superintendent of Personnel Services, Mr. Lloyd Gass, I requested that he seek substantiation of the allegation made by Mr. Fickett against Mr. Griswold. This, after I had spoken at some length of the need for criticism and dissent in a progressive school system, and that Mr. Fickett's remarks in the June 2, 1972 meeting seemed to equate communication with agreement and personal loyalty with a professional working relationship. I asserted that such a concept was violative of Mr. Griswold's constitutional rights and the rights of all teachers. Mr. Gass' written response of May 7, 1973 simply reiterated Mr. Fickett's assertions and lacked the specific documentation we had requested. [¶] I made similar requests from Dr. James Merrihew in a Level III Grievance conference in his office later that month." This is not sufficient declaration to put respondent on notice of any specific or even general assertion that in removing appellant from his chairmanship any violation of his First Amendment rights had occurred. No claim is made that the

constitutional question was ever called to the attention of the governing board of the district, the entity that had the final resolution of the matter. Taking Mr. Kroll's statement at its strongest, there is nothing in it to put respondent on notice of any specific or even general positive assertion that in removing appellant it had violated his First Amendment rights.

The court was correct in holding that the constitutional question had not been raised. The lower court stated: "The Court agrees with Respondents' contention that Petitioners cannot raise here for the first time constitutional arguments which were not presented before the local grievance authorities."

■ "Where different inferences may reasonably be drawn from undisputed evidence, the conclusion of the jury or trial judge must be accepted by the appellate court." (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 254, p. 4245.)

■ c) *Appellant was not prevented from raising any constitutional issue.*

Appellant had ample time to raise any constitutional question had he so desired. Appellant's declaration filed in the lower court states the following chronological account of the events leading to his demotion: As early as April 20, 1972, Mr. Fickett indicated to appellant that he was considering rotating the English department chairmanship because of appellant's domination of the department. In a memorandum dated May 19, 1972, Mr. Fickett expressed four reasons why he felt the chairmanship should be rotated. Thereafter, appellant and Mr. Kroll met several times with Mr. Fickett and the curriculum assistant in order to ascertain "the true reasons for [the] dismissal. . . ." On December 12, 1972, appellant asked Mr. Fickett to put in writing his reasons for appointing a new chairman. This Mr. Fickett did on December 15, 1972. Appellant and Mr. Kroll met with Mr. Naas and Dr. Gass on May 1, 1973, and thereafter, on May 7, 1973, appellant received another letter stating the reasons for his demotion. In the latter part of May, appellant and Mr. Kroll met with Dr. Merrihew, the superintendent, who on June 1, 1973, informed appellant in writing of the reasons for his demotion.

Thus, when the governing board met for the first time on June 12 and then again on June 19 and 28, 1973, appellant was well informed of the reasons for his demotion and yet did not suggest at any time that he

considered the demotion to be a violation of his constitutional rights. At the board meeting of June 19, although appellant had not been informed of the date of the meeting, he was present and states he spoke for five minutes. It would not take that long to mention any constitutional problem, if one existed.

On at least six separate occasions between May 19, 1972, and June 1, 1973, appellant was given reasons for his removal as department chairman. They were: (1) the need for an improved professional working relationship between the administration and the English department (also referred to as the problem of communication and cooperation); (2) to provide an opportunity for an objective interdepartment evaluation of all English programs; (3) to provide an opportunity for the reading program to be placed under a department chairman having an appropriate interest in it; (4) to provide an opportunity for others to experience leadership responsibilities by rotating department chairmanship assignments; (5) to reduce the emphasis on the use of motion picture films in the English department; (6) to eliminate the domination of the English department by appellant; and (7) to better serve the needs of students.

Additionally, appellant was informed that in accordance with district policy it is the prerogative of the principal to recommend individuals for department chairmanships, that such positions are supplemental assignments and the staffing of which is a matter of administrative discretion.

The governing board of the district, in affirming the removal of appellant from the department chairmanship, reached its decision on the ground that the removal was primarily a matter within the administrative discretion of the principal and that in the instant case Mr. Fickett was acting within his discretion. It found that the primary reasons for the removal were the communication problems and the overall benefits of rotation of chairmanships and that it would best serve the interests of the school and its students.

Thus the record does not support appellant's contention that due to lack of notice or an opportunity to be heard that he was prevented from raising any constitutional issue. In fact the record demonstrates that appellant was given many opportunities to raise any issue he wished.

2) *Appeal from the ruling setting aside respondent's decision to transfer appellant to another high school.*

a) *The criminal remedy for violation of the Brown Act is exclusive.*

As hereinbefore stated respondent filed a cross-appeal challenging the court's ruling setting aside respondent's decision to transfer appellant to another high school. This ruling was based upon the court's finding that appellant made a request for a public hearing on the matter and that respondent denied such request and that such denial constituted a violation of the Brown Act. (Gov. Code, §§ 54950-54960.) The Brown Act provides that all meetings of the legislative body of a local agency shall be open to the public. (Gov. Code, § 54953.) The Brown Act provides for an exception for executive sessions as follows: "Nothing in this chapter shall be construed to prevent any board, commission, committee . . . from holding executive sessions . . . to hear complaints or charges brought against such employee by another person or employee *unless such employee requests a public hearing.*" (Italics added.) (Gov. Code, § 54957.) The trial court found that appellant made a request for a public hearing and that the request was substantially denied.

█ Respondent contends that the court erred in ordering the board to set aside its decision sustaining the transfer of appellant because the Brown Act provides an exclusive criminal remedy for violations of its provisions.

In *Adler* v. *City Council* (1960) 184 Cal.App.2d 763 [7 Cal.Rptr. 805], the court held that the meeting under consideration did not violate the Brown Act, but even if the court were to so find, it would not invalidate any action taken at the meeting. (*Id.*, at p. 774.) The court in *Adler* noted that the Brown Act did not provide any penalties for violations of the act and this would ordinarily make the requirements of a statute merely directory, not mandatory, but in view of the public purpose of the Brown Act and the fact that penalties could be imposed under section 1222 of the Government Code or section 177 of the Penal Code, the court stated that the act was mandatory. (*Id.*, at p. 774.) Appellant states the *Adler* case is the only case cited by respondent that directly supports its contention that a criminal remedy for violations of the Brown Act is exclusive, however, appellant asserts the holding in *Adler* has been rendered invalid by subsequent legislative enactments.

After *Adler* was decided the Legislature amended the Brown Act to add section 54959 which provides: "Each member of a legislative body who attends a meeting of such legislative body where action is taken in violation of any provision of this chapter, with knowledge of the fact that the meeting is in violation thereof, is guilty of a misdemeanor." The Governor vetoed the first bill that would have added section 54959 because the bill contained a provision making any action taken at a meeting in violation of the Brown Act void. The Governor stated in his veto message, "I believe that this bill would seriously imperil the finality of all local legislative decisions." (Assem. Daily J. (May 8, 1961) p. 3430.) Thereafter, the Legislature passed and the Governor signed a bill which added section 54959 but eliminated the provision that would have made void any action taken at nonpublic meetings. (*Stribling* v. *Mailliard* (1970) 6 Cal.App.3d 470, 474-475 [85 Cal.Rptr. 924]; 42 Ops.Cal.Atty.Gen. 61, 66.)

Thus, the holding in *Adler* has not been rendered invalid by subsequent legislative enactments. This conclusion becomes more apparent when one looks at the language of several cases decided since section 54959 was enacted. In *Old Town Dev. Corp.* v. *Urban Renewal Agency* (1967) 249 Cal.App.2d 313, 329 [57 Cal.Rptr. 426], the court said: " 'Plaintiff's contentions regarding purported violations of the Brown Act, which in effect proscribes secret meetings of any legislative body in the state, are unavailing, because, even if true, the ordinance would not be invalidated. [Citation.]' " To the same effect is *Claremont Taxpayers Assn.* v. *City of Claremont* (1963) 223 Cal.App.2d 589, 593-594 [35 Cal.Rptr. 907].

In *Greer* v. *Board of Education* (1975) 47 Cal.App.3d 98, 121-122 [121 Cal.Rptr. 542], the court said: "It is questionable whether there was any violation of the Brown Act . . . [but] an action taken in violation of the Brown Act is not void, it merely subjects the members of the governing body to criminal penalties" and cites *Stribling* v. *Mailliard, supra,* 6 Cal.App.3d 470, 474, which held that "even if we assume that section 54950 applies to the challenged regulation, the regulation would not be invalidated," citing *Adler* v. *City Council, supra,* and other cases.

Nor is the reasoning in *Carlson* v. *Paradise Unified Sch. Dist.* (1971) 18 Cal.App.3d 196 [95 Cal.Rptr. 650], applicable to the case at bar. In *Carlson* an injunction was granted because the district failed to comply with the notice requirements of section 966 of the Education Code. The

instant case does not concern the effect of inadequate notice of a meeting but the effect of a nonpublic meeting.

As the only remedy for violation of the Brown Act is the criminal remedy therein prescribed, the trial court was wrong in setting aside the board's decision transferring appellant to another high school.[1]

Appellant states that in addition to the claimed violation of the Brown Act in denying appellant's request for a public hearing, respondent violated section 966 of the Education Code which provides in pertinent part, "all meetings of the governing board of any school district shall be open to the public," and cites *Santa Barbara Sch. Dist.* v. *Superior Court* (1975) 13 Cal.3d 315 [118 Cal.Rptr. 637, 530 P.2d 605] and *Carlson* v. *Paradise Unified Sch. Dist., supra,* 18 Cal.App.3d 196. However, these cases did not deal with secret meetings but in both cases the school board's actions were invalidated because section 966's notice and agenda requirements were not observed. These cases dealt with matters of great district-wide public importance where notice to the public as to the matters to be discussed was vital. The cases are not in point where the board merely held an improper executive session, particularly as the courts have held that the Brown Act does not require that actions taken at such sessions are void.

The portion of the judgment denying the petition for writ of mandate which would have required respondent to set aside its decision ousting appellant from his post as English department chairman at the Pacifica High School is affirmed. The portion of the judgment ordering respondent to set aside its decision to transfer appellant to another school in the district is reversed.

Costs awarded to respondent and cross-appellant.

Taylor, P. J., and Rouse, J., concurred.

---

[1]Although actions taken at a meeting in violation of the Brown Act are not void, the act does provide a means to prevent violations of the act. Section 54960 provides: "Any interested person may commence an action by mandamus, injunction or declaratory relief for the purpose of stopping or preventing violations or threatened violations of this chapter by members of the legislative body of a local agency or to determine the applicability of this chapter to actions or threatened future action of the legislative body."