[Civ. No. 19665. Third Dist. Sept. 30, 1981.]

WILLIAM LEEK et al., Plaintiffs and Appellants, v.
WASHINGTON UNIFIED SCHOOL DISTRICT et al., Defendants
and Respondents.

**COUNSEL**

Ronald A. Zumbrun, John H. Findley and Anthony T. Caso for Plaintiffs and Appellants.

David T. Bryant and Rex H. Reed as Amici Curiae on behalf of Plaintiffs and Appellants.

Charles Mack, County Counsel, Bruce M. Rosenthal, Deputy County Counsel, Raymond L. Hansen, Kirsten L. Zerger, Diane L. Ross and Penn Foote for Defendants and Respondents.

OPINION

CARR, J.—This is an appeal from a judgment of dismissal entered after the trial court sustained a demurrer without leave to amend on the basis of appellants' failure to exhaust their administrative remedies before the Public Employment Relations Board (PERB). Appellants' primary contention is that the substantive grievances alleged in their complaint do not constitute "unfair practices" as defined by the Educational Employment Relations Act (EERA)[1] and therefore lie beyond the jurisdiction of the board. More particularly at issue is the right of the exclusive representative to bargain for "organizational security" which is a clause in the collective bargaining agreement requiring all members of the bargaining unit (the public school employees in question) to become members of the association that is the exclusive bargaining representative or to pay fees to that association in an amount that does not exceed the membership dues of the association. (See Gov. Code, §§ 3540.1, subd. (i)(2), 3543.2 and 3546.)[2]

Respondent Washington Education Association (WEA) is the exclusive bargaining representative for a bargaining unit composed of teachers and other professional personnel, including appellants, who are employed by Washington Unified School District (WUSD). WEA is the local affiliate of California Teachers' Association (CTA) and National Education Association (NEA) and members of WEA pay dues to CTA and NEA.

On March 2, 1979, WUSD and WEA entered into a collective bargaining agreement that requires members of the bargaining unit who are not members of WEA to become either a member or to pay a representation fee equal to the combined dues of WEA, CTA and NEA.[3]

---

[1]Government Code sections 3540-3549.3. Enacted by the Legislature in 1975, EERA grants to public school employees the right to meet and negotiate with the public school employer through an exclusive representative. To supervise the selection of the exclusive representatives and to determine charges of "unfair practices" or "alleged violations of this chapter" (Gov. Code, §§ 3541-3541.5) is granted to PERB.

[2]References are to the Government Code unless otherwise indicated.

[3]The complaint herein alleges WEA is the exclusive bargaining representative for the public school employees in question who are employed by WUSD and that members of WEA are dues-paying members of CTA and NEA. The collective bargaining agreement attached as exhibit No. 1 to the complaint recites that WEA, CTA, and NEA constitute the "Association," the sole and exclusive bargaining agent for the bargaining unit members.

Appellants are members of the bargaining unit, but not of WEA and have refused to become a member or to pay the representation fee, contending the representation fee is excessive and a violation of their rights to freedom of expression and due process of law.

In approaching the question of exhaustion of administrative remedies under the EERA, both appellants and respondents have essentially adapted the analytical framework applied by the Supreme Court in the case of *San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1 [154 Cal.Rptr. 893, 593 P.2d 838]. In that case, by writ of review proceeding, the San Diego Teachers Association and its president sought annulment of contempt orders that punished them for conducting a strike against the school district in violation of a restraining order and a preliminary injunction. The strikers' demands arose from negotiations being conducted on behalf of the district's teachers. When the injunction was issued, both the association and the district had filed unfair practices charges against each other (§ 3541.5) with PERB, but no hearing or other action had ensued. The Supreme Court stated that "[t]he main issue is whether the restraining order and injunction are invalid because the district failed to exhaust its EERA remedies." (*Id.* at p. 3.) Toward resolution of that issue the court identified three main issues: ". . . (1) Could PERB properly determine that the strike was an unfair practice under the EERA? (2) If it made that determination could it furnish relief equivalent to that which would be provided by a trial court? (3) Did the Legislature intend that PERB would have exclusive jurisdiction over remedies against strikes that it properly could find were unfair practices?" (*Id.* at p. 7.)

In the instant case, appellants have modified the above paradigm as follows: (1) Could PERB properly determine that the acts complained of were *unfair practices* under EERA? (2) If so, could it furnish relief equivalent to that which would be provided by a trial court? (3) Did the Legislature intend that PERB would have exclusive initial jurisdiction over remedies for the acts complained of which could be found to be unfair practices? Respondents apparently have assumed the analytical framework, as suggested by appellants, is appropriate.

Section 3541.5 provides, inter alia, that "[t]he initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board." ■
Appellants' position is that they have not alleged charges of unfair

practices and indeed, that their grievances do not plausibly constitute unfair practices, and PERB is without jurisdiction to hear and rule upon the complaints. Both sides agree that sections 3543.5 (listing activities "unlawful" for a public school employer)[4] and 3543.6 (listing activities "unlawful" for an employee organization)[5] provide the basic definitions for what acts constitute unfair practices.

As formulated by the parties, the preliminary and crucial question is whether appellants have alleged plausible violations of either section 3543.5 or 3543.6. Respondents are in the position of having to make a somewhat procrustean effort to fit each of appellants' allegations within the parameters of unlawfulness as defined by sections 3543.5 and 3543.6.

We conclude the parties have based their arguments upon the erroneous premise that PERB is limited to investigating only charges which are defined as "unlawful" under sections 3543.5 and 3543.6. The Legislature has further vested PERB with authority to investigate other alleged violations of the EERA and to make determinations with respect to such alleged violations. Section 3541.3, subdivision (i), provides that the board shall have the power and duty "[t]o investigate unfair practice charges *or alleged violations of this chapter*, and to take such

---

[4]Section 3543.5 reads as follows: "It shall be unlawful for a public school employer to:

"(a) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(b) Deny to employee organizations rights guaranteed to them by this chapter.

"(c) Refuse or fail to meet and negotiate in good faith with an exclusive representative.

"(d) Dominate or interfere with the formation or administration of any' employee organization, or contribute financial or other support to it, or in any way encourage employees to join any organization in preference to another.

"(e) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with Section 3548)."

[5]Section 3543.6 reads as follows: "It shall be unlawful for an employee organization to:

"(a) Cause or attempt to cause a public school employer to violate Section 3543.5.

"(b) Impose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or otherwise to interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter.

"(c) Refuse or fail to meet and negotiate in good faith with a public school employer of any of the employees of which it is the exclusive representative.

"(d) Refuse to participate in good faith in the impasse procedure set forth in Article 9 (commencing with § 3548)."

action and make such determinations in respect of such charges or alleged violations as the board deems necessary to effectuate the policies of this chapter." (Italics added.) Subdivision (h) of section 3541.3 empowers the board to hold hearings, and subdivision (j) permits the board to enforce its decision or ruling by bringing an action in a court of competent jurisdiction. Subdivision (n) empowers the board "[t]o take such other action as the board deems necessary to discharge its powers and duties and otherwise to effectuate the purposes of this chapter."

While it was appropriate for the court in *San Diego Teachers Assn., supra*, (24 Cal.3d 1) to focus upon whether the strike therein could be considered an unfair practice,[6] we determine the appropriate preliminary question in this case is whether the matters complained of could constitute either unfair practice charges or alleged violations of the EERA. The authority of the board to deal with matters other than those which are "unlawful" under sections 3543.5 and 3543.6 was not disputed by the court in *San Diego Teachers Assn.* The court noted an argument made in an amicus brief that a comparison of section 3541.5[7] to section 3541.3, subdivision (i) (giving PERB power to deal with "unfair practice charges or alleged violations of this chapter"), demonstrates that there is no exclusive initial jurisdiction over EERA violations other than unfair practices and was unpersuaded, explaining "EERA specifies no 'unfair practices' but only acts that are 'unlawful' (§§ 3543.5, 3543.6) and thus does not segregate unfair practices from other violations." (*Id.* at p. 13.)

As noted, the collective bargaining agreement contains organizational security provisions requiring any member of the bargaining unit who is not a member of the "Association"[8] shall pay a representation fee to the Association in an amount equal to the unified membership dues of the Association.[9] Sections 3543.2 and 3546 permit school districts and

---

[6]The court in *San Diego Teachers Assn.* stated that "[o]ur holding is limited to injunctions against strikes by public school employee organizations recognized or certified as exclusive representatives (§ 3540.1, subd. (e))." (P. 14.)

[7]Section 3541.5 states that "[t]he initial determination as to whether the charges of unfair practices are justified, and, if so, what remedy is necessary to effectuate the purposes of this chapter, shall be a matter within the exclusive jurisdiction of the board."

[8]The term "Association" as used in article 10 is defined in article 1 of the contract as including WEA, CTA, and NEA.

[9]Paragraph 10.3 states that "Any unit member who is not a member of the Association as of the effective date of this Agreement may become an Association member or shall pay a representation fee to the Association which fee shall be equal to the unified membership dues of the Association."

school employee unions to include a provision for organizational security in their contract. Section 3540.1, subdivision (i)(2), defines organizational security as "[a]n arrangement that requires an employee, as a condition of continued employment, either to join the recognized or certified employee organization, or to pay the organization a service fee in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of such organization for the duration of the agreement, or a period of three years from the effective date of such agreement, whichever comes first." Section 3540.1, subdivision (d) defines an "employee organization" to mean ". . . any organization which includes employees of a public school employer and which has as one of its primary purposes representing such employees in their relations with that public school employer. 'Employee organization' shall also include any person such an organization authorizes to act on its behalf."

Appellants' first cause of action alleges that neither CTA nor NEA has as one of its *primary purposes* the representation of WUSD employees in their relationship with the district employer and the requirement that appellants pay a representation fee to those associations is a violation of sections 3540.1, subdivision (d), and 3540.1, subdivision (i)(2).

Appellants' second cause of action alleges that the requirement appellants pay a representation fee to more than one employee group violates sections 3540.1, subdivision (d), 3540.1 subdivision (i)(2), 3543.2 and 3546.

The third, fourth and fifth causes of action are based upon alleged violations of certain constitutional rights. The third cause of action alleges that substantial portions of the fees to WEA, CTA, and NEA support activities not directly and necessarily related to the collective bargaining and contract administration process, and that because of their status as nonmembers, appellants were precluded from voting on how the dues should be spent and were denied any particularized benefit from any expenditures that are not directly and necessarily related to the collective bargaining and contract administration process. Accordingly, it is alleged that appellants have been denied due process under both the United States and California Constitutions. The fourth cause of action alleges substantial portions of the dues are spent on political, ideological, and other activities not directly and necessarily related to the collective bargaining and contract administration process. Examples

of such activities are listed in the complaint.[10] Appellants urge such expenditures violate their right to freedom of expression and association as guaranteed by the First and Fourteenth Amendments to the United States Constitution and article I, sections 2 and 3 of the California Constitution has been violated.

The fifth and last cause of action alleges that to the extent sections 3543.2 and 3546 authorize the forced contribution of representation fees in amounts that exceed the nonunion members' proportionate share of expenses necessary to the collective bargaining process, those sections violate appellants' right to due process under both the United States and California Constitutions.[11]

We conclude that appellants' first two causes of action allege violations of the EERA and as such are within the investigatory power of PERB, pursuant to section 3541.3, subdivision (i).

The third cause of action alleges that appellants were denied voting rights and particularized benefits due to their status as nonmembers, despite payment of dues in excess of that which would be required to support activities directly and necessarily related to bargaining and contract administration costs. Though couched in a constitutional context, the allegations plausibly constitute unfair practices under section 3543.6, subdivision (b), which makes it " . . . unlawful for an employee organization to . . . [i]mpose or threaten to impose reprisals on employees, to discriminate or threaten to discriminate against employees, or

---

[10]"a. providing financial support for the campaigns of candidates for public office;

"b. engaging in activities or supporting activities of others intended to encourage or discourage public support for candidates or ballot measures presented to voters at elections;

"c. encouraging those segments of the public to vote that will most likely support positions taken by defendants WEA, CTA, and NEA;

"d. lobbying for the passage or defeat of legislation or administrative regulations;

"e. advancing their own views on philosophical, social, political, professional, and educational policy issues so as to gain support for those views from fellow educators, political officials, and the public;

"f. recruiting new members; and

"g. sponsoring social and charitable activities."

[11]In *Abood* v. *Detroit Board of Education* (1977) 431 U.S. 209 [52 L.Ed.2d 261, 97 S.Ct. 1782], a decision issued a year after the effective date of EERA, the court considered Michigan statutory provisions essentially the same as the organizational security provisions of EERA and upheld the law only insofar as the fee charged was "used to finance expenditures by the Union for the purposes of collective bargaining, contract administration, and grievance adjustment." (*Id.*, at p. 225 [52 L.Ed.2d at p. 278].)

otherwise interfere with, restrain, or coerce employees because of their exercise of rights guaranteed by this chapter." If the allegations of the third cause of action were before PERB as alleged unfair practices, it is reasonably perceived that a ruling by PERB could resolve the alleged constitutional violations alleged in the third, fourth, and fifth causes of action. However, if relief were unavailable at the administrative level, appellants would still be required to exhaust administrative remedies prior to making the constitutional challenge. (*Security-First Nat. Bk.* v. *County of L. A.* (1950) 35 Cal.2d 319, 321 [217 P.2d 946]; *Griswold* v. *Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648, 652-653 [134 Cal.Rptr. 3]; *Morton* v. *Superior Court* (1970) 9 Cal.App.3d 977, 984-985 [88 Cal.Rptr. 533].) Exhaustion of the administrative remedy does not foreclose appellants from raising the constitutional arguments in a subsequent judicial proceeding. (*Mountain View Chamber of Commerce* v. *City of Mountain View* (1978) 77 Cal.App.3d 82, 94-95 [143 Cal.Rptr. 441].)

On the issue of whether PERB could furnish relief equivalent to that available in a court action (*San Diego Teachers Assn.* v. *Superior Court, supra,* 24 Cal.3d at p. 9; *Endler* v. *Schutzbank* (1968) 68 Cal.2d 162, 168 [65 Cal.Rptr. 297, 436 P.2d 297]), we note appellants sought what they characterize as a wide range of remedies including: "a declaration that the representation fee provisions of the collective bargaining agreement is void; a declaration that respondents CTA and NEA are not entitled to receive any representation fee from appellants; a declaration that sections 3543.2 and 3546 are unconstitutional; an injunction to prevent respondent WUSD from dismissing appellants for failure to comply with the representation fee provisions of the collective bargaining agreement; an injunction to prevent collection of a representation fee from appellants by or on behalf of respondents CTA and NEA; an order for an accounting of expenditures directly and necessarily incurred by respondent WEA in the collective bargaining process between respondents WEA and WUSD; and an injunction to prevent respondent WEA from collecting a representation fee from appellants in excess of appellants' proportionate share of the amount determined in the court-ordered accounting."

Appellants aver that PERB's remedial powers are not sufficiently broad to afford such relief. It does appear that the board could plausibly provide relief functionally equivalent to that available in a court action. As noted, the board has the power to make determinations with respect to such charges or alleged violations as the board deems neces-

sary to effectuate the policies of the EERA. (§ 3541.3, subd. (i).) Under subdivision (n) of section 3541.3 the board is given broad powers to effectuate the purpose of the EERA, and subdivision (j) of that same section empowers the board "[t]o bring an action in court of competent jurisdiction to enforce any of its orders, decisions or rulings . . ."

Appellants contend the relief they request with respect to the alleged constitutional violations cannot be obtained from PERB because of the limitation of article III, section 3.5 of the California Constitution which provides: "An administrative agency, including an administrative agency created by the Constitution or an initiative statute, has no power: [¶] (a) To declare a statute unenforceable, or refuse to enforce a statute, on the basis of it being unconstitutional unless an appellate court has made a determination that such statute is unconstitutional; [¶] (b) To declare a statute unconstitutional; [¶] (c) To declare a statute unenforceable, or to refuse to enforce a statute on the basis that federal law or federal regulations prohibit the enforcement of such statute unless an appellate court has made a determination that the enforcement of such statute is prohibited by federal law or federal regulations."

However, as we previously perceived, it is a reasonable probability that a ruling by PERB on the nonconstitutional issues would obviate the consideration of constitutional challenges. In any event, appellants are required to exhaust their administrative remedies despite the allegations of constitutional violations. (*Security-First Nat. Bk.* v. *County of L. A., supra,* 35 Cal.2d at p. 321; *Griswold* v. *Mt. Diablo Unified Sch. Dist., supra,* 63 Cal.App.3d at pp. 652-653; *Morton* v. *Superior Court, supra,* 9 Cal.App.3d 977 at pp. 984-985.)

The Legislature has invested PERB with powers and duties sufficient to investigate appellants' nonconstitutional allegations, to make determinations with respect thereto (§ 3541.3, subd. (i)), and to enforce any of its orders, decisions or rulings by bringing an action in a court of competent jurisdiction. (§ 3541.3, subd. (j).) This demonstrates a clear intention by the Legislature that PERB should exercise initial jurisdiction over remedies to grievances such as those alleged by appellants. "The basic purpose for the exhaustion doctrine is to lighten the burden of overworked courts in cases where administrative remedies are available and are as likely as the judicial remedy to provide the wanted relief. It is the rule that if an administrative remedy is available, it must be exhausted even though the administrative remedy is couched in permissive language." (*Morton* v. *Superior Court, supra,* 9 Cal.App.3d at

p. 982.) In sustaining the demurrer and entering the dismissal the trial court properly determined appellants had failed to exhaust their administrative remedies.

The judgment is affirmed.

Evans, J., concurred.

**PUGLIA, P. J.**—I dissent.

Appellants' first two causes of action clearly raise issues within the jurisdiction of PERB pursuant to that Board's statutory duty "To investigate ... alleged violations of this chapter." (Gov. Code, § 3541.3, subd. (i).)

The latter three causes of action of appellants' complaint tender issues which are not within the competence of PERB to decide. In those three causes of action appellants claim their federal and state constitutional rights are violated by the forced extraction of a representation fee in excess of the amount required to conduct collective bargaining and to administer the contract of employment, and the use of the excess for purposes hostile to their interests and beyond their control. (See *Abood v. Detroit Board of Education* (1977) 431 U.S. 209 [52 L.Ed.2d 261, 97 S.Ct. 1782].)

Extraction of a representation fee from nonmembers of an employee organization is expressly authorized by the EERA (Gov. Code, §§ 3543.2 and 3546) which allows such fees "in an amount not to exceed the standard initiation fee, periodic dues, and general assessments of such [employee] organization ..." (Gov. Code, § 3540.1, subd. (i)(2)). The statute contains no other limitation on the amount of such fees and no restrictions on their use. The fees in question here do not exceed the amount authorized by the statute. Since the fees in issue are clearly authorized by statute both in their nature and amount, the challenge thereto does not raise an issue of violation of the EERA; for the same reason, the challenge cannot be said, even arguably, to involve a charge of unfair practices (see Gov. Code, §§ 3541.3, subd. (i); 3543.5; 3543.6). The statute does not confer jurisdiction on PERB to determine appellants' constitutional claims. Moreover those claims involve a direct attack on the constitutionality of the statute. By the very nature of such a claim, PERB is incompetent to entertain it. (Cal. Const., art. III, § 3.5.)

The first cause of action alleges that two of the three groups (CTA and NEA), which together constitute the "employee organization" to which representation fees are paid, do not have as one of their "primary purposes" the representation of employees in relations with their employer; because of this deficiency, neither qualifies as an "employee organization" within Government Code sections 3540.1, subdivision (i) and 3540.1, subdivision (i)(2). No such claim is made with respect to WEA, the third constituent of the contracting "employee organization."

The second cause of action alleges that the three component organizations of the association representing the employees of Washington Unified School District in fact constitute three separate "employee organizations," and the contract in requiring payment of a representation fee to more than one such organization violates Government Code sections 3540.1, subdivision (d) and 3540.1, subdivision (i)(2), 3543.2 and 3546.

It is apparent from the first two causes of action that even if appellants' position were administratively vindicated, it is unlikely that their constitutional claims would thereby be resolved. The status of WEA as a legitimate employee organization is not questioned nor is there a challenge to the right of at least one of the three components of the association contracting for the employees to receive a representation fee. If appellants were to prevail in administrative proceedings on the issues posed by the first two causes of action, they would still be subject to payment to WEA of a representation fee in excess of the amount required to conduct collective bargaining and administer the contract. A fee in that amount is expressly authorized by statute (Gov. Code, § 3540.1, subd. (i)(2)) but constitutionally suspect (*Abood* v. *Detroit Board of Education, supra*).

Inability of PERB to afford appellants relief on their constitutional claims creates an exception to the usual requirement that administrative remedies first be exhausted. (*San Diego Teachers Assn.* v. *Superior Court* (1979) 24 Cal.3d 1, 7 [154 Cal.Rptr. 893, 593 P.2d 838]; see generally, 2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 182, pp. 1046, 1047.) The constitutional issue forms the gravamen of appellants' complaint. Administrative determination of the incidental claims under the statute will not resolve the constitutional issue. Therefore deferral of the constitutional claims until PERB has resolved the statutory questions serves no legitimate purpose. The interests of justice are not served by requiring appellants' complaint of violation of their constitu-

tional rights to languish indefinitely as an inert appendage to incidental administrative proceedings before it can be heard and decided in the only forum in which appellants can receive relief.

I would reverse the judgment with instructions to the trial court to overrule respondents' demurrer.

A petition for a rehearing was denied October 27, 1981, and appellants' petition for a hearing by the Supreme Court was denied December 23, 1981.