[No. C049936. Third Dist. Sept. 1, 2006.]

SERVICE EMPLOYEES INTERNATIONAL UNION, LOCAL 1000,
Plaintiff and Appellant, v.
DEPARTMENT OF PERSONNEL ADMINISTRATION, Defendant and
Respondent.

## Counsel

Katzenbach and Khtikian, Christopher W. Katzenbach; Anne M. Giese and Paul E. Harris III for Plaintiff and Appellant.

K. William Curtis, Warren C. Stracener, Kevin A. Geckeler and Christopher E. Thomas for Defendant and Respondent.

## Opinion

**RAYE, J.**—The trial court sustained the State of California's demurrer to a union's complaint challenging the state's refusal to permit work site distribution of material supporting a ballot proposition. The court held the union was first required to arbitrate the question of whether the materials were of a "partisan political nature" within the meaning of prohibitory language in a collective bargaining agreement. On appeal, the union contends the state's interpretation of the disputed contractual language constitutes a deprivation of its federal and state constitutional right to freely communicate with its members and such a general policy operates as a prior restraint on free speech, thereby inflicting irreparable harm. We agree with the trial court that the union's failure to exhaust its arbitration remedy bars its premature civil action, and therefore, we affirm the judgment of dismissal.

## FACTS

The Service Employees International Union, Local 1000 (CSEA) (the union) entered into various collective bargaining agreements with the State of California (the state). The agreements allow the distribution of union materials, literature, and information before or after work hours or during meal and rest periods. The union may use employee mailboxes, in-baskets, electronic

communications systems, and bulletin boards. But the union agreed that "any literature posted or distributed on site will not be libelous, obscene, defamatory, or of a partisan political nature."

The agreements set forth "Grievance and Arbitration Procedures." A grievance is a dispute between the state and the union "involving the interpretation, application, or enforcement of the express terms of this Contract." The agreements require the parties to attempt to settle their disputes informally, but if they are unsuccessful, they must follow four steps culminating in binding arbitration. The union did not follow any of the informal or formal grievance and arbitration procedures under the collective bargaining agreement before filing its petition for a writ of mandate and complaint for declaratory and injunctive relief (the complaint).

The complaint alleges that the state prevented the union "from communicating with its members at work sites on legislation and ballot measures using the methods and facilities specifically allowed by the provisions of Local 1000's contracts . . . . In particular, the State and its departments have refused to allow Local 1000, its stewards or its members to distribute material supporting Proposition 72 on the November 2, 2004 ballot . . . ." The union further alleges: "The restrictions on 'partisan political' distributions in Local 1000's contracts with the State (i) do not authorize the State to engage in a prior restraint of these communications; and (ii) apply only to material that expressly endorses or urges the election or defeat of specific candidates for partisan political offices and has no application to the communications Local 1000 has attempted to distribute that do not expressly endorse or urge the election or defeat of specific candidates for partisan political offices."

Thus, according to the union, the state has infringed on its "rights of freedom of speech, freedom of association and freedom of assembly protected by Article I, §§ 2(a) and 3 of the Constitution of the State of California and by the First and Fourteenth Amendments to the Constitution of the United States." The union further claims that the distribution of materials does not violate Government Code sections 8314 or 19990. It prays for declaratory and injunctive relief.

## DISCUSSION

■ " 'It is the general rule that a party to a collective bargaining contract which provides grievance and arbitration machinery for the settlement of disputes within the scope of such contract must exhaust these internal

remedies before resorting to the courts in the absence of facts which would excuse him from pursuing such remedies.' " (*Charles J. Rounds Co. v. Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888, 894 [95 Cal.Rptr. 53, 484 P.2d 1397] (*Charles J. Rounds Co.*).) As a matter of public policy, contractual arbitration remains a highly favored means of dispute resolution even for public sector collective bargaining units. (*Posner v. Grunwald-Marx, Inc.* (1961) 56 Cal.2d 169, 180 [14 Cal.Rptr. 297, 363 P.2d 313]; *United Transportation Union v. Southern Cal. Rapid Transit Dist.* (1992) 7 Cal.App.4th 804, 808–809 [9 Cal.Rptr.2d 702].) Thus, a strong presumption in favor of arbitrability applies and all doubts must be resolved in favor of coverage. (*Lesser Towers, Inc. v. Roscoe-Ajax Constr. Co.* (1969) 271 Cal.App.2d 675, 695 [77 Cal.Rptr. 100] (*Lesser Towers*).) A party to a collective bargaining agreement containing an express grievance and arbitration mechanism can bypass arbitration only if it can be said " ' "with positive assurance" ' " the clause is not susceptible to an interpretation that covers the asserted dispute. (*Charles J. Rounds Co., supra,* 4 Cal.3d at p. 892.)

The failure to arbitrate before filing a civil action is analogous to the failure to exhaust administrative remedies. (*Charles J. Rounds Co., supra,* 4 Cal.3d at p. 894.) In either case, the complainant must exhaust the alternative remedies before resorting to the courts. The policies favoring the general exhaustion requirement remain compelling even when resort to the courts is ultimately inevitable. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 328–329 [25 Cal.Rptr.3d 320, 106 P.3d 976].)

The state frames the dispute as contractual; that is, the parties dispute the meaning of the contractual language "of a partisan political nature," and pursuant to their grievance and arbitration clauses, the interpretation of the agreement must be arbitrated. The union insists the dispute presents a constitutional, not a contractual, issue. In the union's view, the state is manipulating the grievance procedure to impose a prior restraint on the union's constitutional right to communicate with employees. Either way, our review is de novo. (*Hartnell Community College Dist. v. Superior Court* (2004) 124 Cal.App.4th 1443, 1448–1449 [22 Cal.Rptr.3d 410].) We must accept as true the facts as alleged in the complaint and thus cannot consider conflicting extrinsic evidence in aid of interpretation of the arbitration agreement. (*Ibid.; Blank v. Kirwan* (1985) 39 Cal.3d 311, 318 [216 Cal.Rptr. 718, 703 P.2d 58].) It is only the court's denial of the opportunity to amend we review for an abuse of discretion. (*Hendy v. Losse* (1991) 54 Cal.3d 723, 742 [1 Cal.Rptr.2d 543, 819 P.2d 1].)

Two fundamental propositions are not at issue. The state does not challenge the union's constitutional right to communicate with its employees under both the federal and state Constitutions. (See *L. A. Teachers Union v. L. A. City Bd. of Ed.* (1969) 71 Cal.2d 551 [78 Cal.Rptr. 723, 455 P.2d 827].) The union does not challenge the scope of the arbitration clause; in other words, the union does not contend that the interpretation of "partisan political" is not covered by the collective bargaining agreement. Rather, the union asserts that compliance with the arbitration agreement is excused for a variety of extraordinary reasons.

According to the union, quite simply the Constitution trumps the contract. The union argues that arbitration is too slow and cumbersome when constitutional rights hang in the balance. As a result, the exhaustion requirement must be excused to avoid the irreparable injury involved in suspending its right to free speech. Persuasive authority, however, is to the contrary.

■ "Even where the statute sought to be applied and enforced by the administrative agency is challenged upon constitutional grounds, completion of the administrative remedy has been held a prerequisite to equitable relief." (*Griswold v. Mt. Diablo Unified Sch. Dist.* (1976) 63 Cal.App.3d 648, 652 [134 Cal.Rptr. 3].) "[I]f relief were unavailable at the administrative level, appellants would still be required to exhaust administrative remedies prior to making the constitutional challenge." (*Leek v. Washington Unified School Dist.* (1981) 124 Cal.App.3d 43, 52 [177 Cal.Rptr. 196] (*Leek*); see *Morton v. Superior Court* (1970) 9 Cal.App.3d 977, 984–985 [88 Cal.Rptr. 533]; *Security-First Nat. Bk. v. County of L. A.* (1950) 35 Cal.2d 319, 321 [217 P.2d 946].) "[C]onstitutional challenges are frequently raised to the application of an administrative statutory scheme, yet the courts typically require such issues to be presented to the administrative agency in the first instance." (*Department of Personnel Administration v. Superior Court* (1992) 5 Cal.App.4th 155, 169 [6 Cal.Rptr.2d 714] (*Department of Personnel Administration*); see *Link v. Antioch Unified School Dist.* (1983) 142 Cal.App.3d 765, 768–769 [191 Cal.Rptr. 264].)

The facts of *Mountain View Chamber of Commerce v. City of Mountain View* (1978) 77 Cal.App.3d 82 [143 Cal.Rptr. 441] provide an apt analogy. Sign owners, among others, challenged the constitutionality of a city sign ordinance before seeking a variance. (*Id.* at pp. 85–86.) The owners argued that exhaustion of administrative remedies is not required where the challenge is to the constitutionality of the government action and irreparable injury

would result from delay. (*Id.* at p. 89.) The court held that the owners should have applied for a variance and given the city the opportunity to examine the case on its own merits and remove it from the list of nonconforming signs if the circumstances warranted, thus avoiding the constitutional infirmities they challenged. (*Id.* at pp. 93–95.) In rejecting the owners' facial challenge to the constitutionality of the zoning ordinance, the court stated, "[I]f the appellants should apply for a variance as provided in the zoning ordinance and be denied such relief, they could thereafter in another judicial proceeding challenge the constitutionality of the entire ordinance or a particular provision therein as it affected their property and/or business." (*Id.* at p. 95.)

In all of these cases, the courts required the complainants to exhaust their administrative remedies, even in the face of a constitutional challenge to the statute, ordinance, or other governmental regulation or ruling. Unlike the union here, none of these complainants had assented to an alternative forum for the resolution of their disputes, and yet the courts deferred to the administrative agencies before considering the constitutional challenge. Rarely have the courts excused the exhaustion requirement based on the complainant's asserted irreparable injury.

Justice Puglia wrote of one such rare bird, a case in which the administrative agency, the Public Employment Relations Board (PERB), itself had declined to take jurisdiction over the matter. In *Department of Personnel Administration, supra,* 5 Cal.App.4th 155, we applied the exception because of "the urgent need for definitive judicial review of this matter prior to the end of the 1991–1992 fiscal year. Because of the unprecedented nature of the fiscal crisis faced by the state, the urgent need for resolution of these issues prior to the end of the year, and the great potential for irreparable harm in the nature of increased layoffs of state employees, we believe the failure of the unions to exhaust their administrative remedy by filing an unfair practice charge with PERB should be excused." (*Id.* at p. 171.)

■ We conclude, for several reasons, that the union must exhaust its dispute resolution mechanism of choice before resorting to the courts to resolve the constitutional question. First, we must adhere to the strong public policy of this state favoring arbitration and requiring us to resolve all doubts in favor of arbitration. (*Lesser Towers, supra,* 271 Cal.App.2d at pp. 695–696.) Second, we subscribe to the venerable jurisprudential principle to avoid constitutional questions where other grounds are available. (*California State Electronics Assn. v. Zeos Internat. Ltd.* (1996) 41

Cal.App.4th 1270, 1274 [49 Cal.Rptr.2d 127].) There may be a reasonable probability, as we suggested in *Leek, supra,* 124 Cal.App.3d 43, that the ruling by the arbitrator would "obviate the consideration of constitutional challenges." (*Id.* at p. 53.) Without a ruling from the arbitrator construing the meaning the parties ascribed to "partisan political" when they negotiated the collective bargaining agreement, we have no way to ascertain whether any constitutional rights are implicated, jeopardized, or infringed. The parties bargained to have an arbitrator interpret their contract, a bargain we uphold by requiring the union to exhaust arbitration before seeking a judicial ruling on a constitutional issue that may never arise. And finally, the union has not presented that rare set of circumstances compelling us to excuse its failure to exhaust its negotiated remedies because, as it asserts, it will suffer irreparable injury, arbitration is inadequate, or judicial delay will result in a multiplicity of actions.

The union insists that any infringement of the First Amendment constitutes irreparable injury, citing such cases as *Elrod v. Burns* (1976) 427 U.S. 347 [949 L.Ed.2d 547, 6 S.Ct. 2673], *Ebel v. City of Corona* (9th Cir. 1983) 698 F.2d 390, and *Ketchens v. Reiner* (1987) 194 Cal.App.3d 470 [239 Cal.Rptr. 549]. But, as the court aptly explained in *Sundance Saloon, Inc. v. City of San Diego* (1989) 213 Cal.App.3d 807 [261 Cal.Rptr. 841], such authorities, if "viewed with an uncritical eye," might be read to suggest that "any infringement upon the First Amendment right to freedom of expression automatically results in irreparable harm." (*Id.* at p. 814.) "[W]hen examined closely," however, the court concluded, these authorities "reflect only the use of language which is meant to underscore the significance of the First Amendment." (*Ibid.*) We reject the union's notion, therefore, that the mere pleading of the First Amendment excuses its obligation to exhaust the remedy set forth in its agreement with the state. More than the mere mention of the First Amendment is necessary to demonstrate the rare type of irreparable harm that justifies skipping arbitration and rushing to the courts.

But the union contends the delay inherent in the arbitral process is, in the words of *Bailey v. Loggins* (1982) 32 Cal.3d 907, 921 [187 Cal.Rptr. 575, 654 P.2d 758] (*Bailey*), "as effective a form of censorship as suppression." Certainly we recognize the time sensitivity of the communication to employees of a political nature, whether or not the communication is deemed "partisan." If, as here, an election is pending or other circumstances arise in which the union is able to demonstrate, if necessary, at an evidentiary hearing

that it will suffer irreparable harm during the arbitral process, it may be entitled to a status quo injunction. (*American Postal Workers Union v. U.S. Postal Serv.* (9th Cir. 2001) 16 Fed.Appx. 589, 590–591.) Moreover, the union's hyperbolic argument about a potential 79-day delay rings somewhat hollow given that the trial court entered its ruling on April 28, 2005, and the appellate process has taken well over a year. As the state points out, an arbitrator would have interpreted the contractual language long ago had the union not resisted the very arbitration it agreed to in the collective bargaining agreement. In that case, we would know whether, according to the terms of the agreement, a constitutional issue is even presented.[1]

Nor does *Bailey, supra,* 32 Cal.3d 907 dictate a different result. In *Bailey,* the Supreme Court ordered the Department of Corrections to adopt regulations to assure the speedy review of articles barred from publication in a prison newspaper. The facts in *Bailey* are completely inapposite, and the case did not raise the exhaustion of remedies issue at all, did not involve a union contract, and did not involve arbitration. The trial court properly discounted the applicability of the case to the issues before it.

The union maintains the arbitration of the state's decision to ban its communication regarding Proposition 72 is inadequate and will lead to a multiplicity of actions. The union characterizes the state's decision as a pervasive general policy establishing prior restraint as a modus operandi. As a result, it claims it will be required to arbitrate the meaning of "partisan political" each and every time the state implements that policy, and each time it will suffer irreparable harm in the meantime. Such dire predictions seem unlikely.

The parties fundamentally disagree on their choice of contractual language. While the union believes "partisan political" refers only to specific candidates for partisan political office, the state interprets the language to include political communication with a particular point of view. The resolution of that dispute will require the arbitrator to construe the meaning of the language the parties used, taking into consideration any extrinsic evidence of their intent during the negotiation of the agreement. Whatever the outcome, the arbitrator will divine the meaning of the words "partisan political." The state concedes it will be bound by the interpretation of the arbitrator and therefore will apply

---

[1] If so, the secondary issue of waiver would arise, an issue we need not address in the absence of arbitral proceedings.

the interpretation consistently and even handedly to future communications. As a consequence, multiplicity of actions is unlikely.[2]

■ The union points out that the complaint challenged the state's interpretation of independent state laws (Gov. Code, §§ 8314, 19990) as well as its interpretation of the collective bargaining agreement. The crux of this case is where it will begin, not where it will end. As with the union's eagerness to litigate its constitutional claims, the statutory arguments can await an arbitrator's decision on the contract. That decision may dispose of the constitutional and statutory claims and save the judicial system the burden of resolving those disputes the parties have agreed to resolve in another forum. Moreover, an arbitration award may be vacated if it violated some explicit public policy that is well defined and dominant. (*Paperworkers v. Misco* (1987) 484 U.S. 29, 43 [98 L.Ed.2d 286, 302, 108 S.Ct. 364]; *Jordan v. Department of Motor Vehicles* (2002) 100 Cal.App.4th 431, 438 [123 Cal.Rptr.2d 122]; *Social Services Union v. Alameda Training & Employment Bd.* (1989) 207 Cal.App.3d 1458, 1465 [255 Cal.Rptr. 746].) If, as the union fears, the arbitrator renders a decision at odds with its constitutional rights, the union might thereafter seek judicial review under such a public policy exception to binding arbitration.

Fighting mightily to save its lawsuit, the union urges us to allow it to amend the complaint. The trial court explained: "[The union] argues that it and its members will suffer irreparable harm because there are ongoing issues that it would want to communicate about, that [the state] has a policy of not allowing such communications, and that the grievance and arbitration process is too time-consuming. However, such ongoing issues are not pleaded. The focus of the petition is ballot measures and propositions, and, specifically, Proposition 72. Although counsel made references to other issues during oral argument on the demurrer, [the union] has not sought leave to amend to allege such specific ongoing issues. They may be appropriate for another case. However, they are not part of the allegations of this case." The court sustained the demurrer without leave to amend because the union had not "pursued the available remedies and thus cannot amend to cure that defect." We review the trial court's ruling for an abuse of discretion. (*Record v. Reason* (1999) 73 Cal.App.4th 472, 486 [86 Cal.Rptr.2d 547].)

---

[2] Nor does the union suggest the arbitral proceedings are deficient under the collective bargaining agreement as in *Sunnyvale Public Safety Officers Assn. v. City of Sunnyvale* (1976) 55 Cal.App.3d 732, 736 [127 Cal.Rptr. 863]. While claiming steadfastly that arbitration is inadequate given the narrow scope of the arbitrator's ruling, the union does not seem to argue that the nature of the proceedings themselves would be ineffective.

The union goes to great lengths to demonstrate that its pleadings did allege an ongoing policy and raised issues far broader than Proposition 72. That may be. But whether a policy has been pled or could be pled does not cure the basic defect as identified by the trial court. The union has failed to exhaust the grievance and arbitration remedies, and that failure is fatal to its action in the courts of this state. Because we agree with the trial court that the union has not presented the rare and egregious facts sufficient to excuse it for bypassing the very remedy set forth in its contract, we affirm the judgment of dismissal. We need not consider the state's alternative argument that the union also failed to exhaust its administrative remedy before PERB.

The judgment is affirmed.

Davis, Acting P. J., and Hull, J., concurred.

Appellant's petition for review by the Supreme Court was denied November 15, 2006, S147279.